841 A.2d 937 (2004)
366 N.J. Super. 535
Gilbert CHRISTY and Dorothy Bates, Plaintiffs-Respondents,
v.
Raja R. SALEM, M.D., Laura Anne Lee, M.D., Capital Surgical Associates, Daniel Brodoff, M.D., Bartley Larsen, M.D., Capital Imaging Associates, P.A., Scott Miller, M.D., Ariel Abud, M.D., Defendants, and
Helene Fuld Medical Center and Capital Health Systems, Inc., Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued December 10, 2003.
Decided February 17, 2004.
*938 Stacy L. Moore, Jr., Marlton, argued the cause for appellants (Parker, McCay & Criscuolo, attorneys; Mr. Moore, on the brief).
Daniel L. Thistle, Philadelphia, PA, of the Pennsylvania bar, admitted pro hac vice, argued the cause for respondents (Archer & Greiner, attorneys; Frank D. Allen, Haddonfield, and Mr. Thistle, on the brief).
Ross A. Lewin, New Brunswick, argued the cause for amicus curiae New Jersey Hospital Association (Windels, Marx, Lane & Mittendorf, attorneys; Mr. Lewin, on the brief).
Before Judges LINTNER, LISA and REISNER.
The opinion of the court was delivered by LINTNER, J.A.D.
We granted defendants, Capital Health System at Fuld[1] and Capital Health System, Incorporated (Fuld), an emergent stay and leave to appeal from a Law Division order directing it to provide plaintiff Gilbert Christy[2] with a copy of its peer review committee report. We also directed Fuld to submit the pertinent documents to us under seal. We now reverse in part, affirm in part, and remand for further proceedings.
The relevant facts are substantially undisputed. On January 2, 2002, plaintiff was injured in a motor vehicle accident when the right front tire of his truck blew out causing the truck to flip over and come to rest in a ditch. He was taken to Fuld where he came under the care of several physicians including two trauma surgeons, a neurosurgeon, a radiologist, a neuroradiologist, and an orthopedic surgeon. After performing radiological studies on plaintiff's neck, a decision was made to remove plaintiff's extubation tube to perform an MRI. According to plaintiff, prior to the time the extubation tube was removed, he was able to move his extremities. After the tube was removed, plaintiff became paralyzed from the neck down. An MRI revealed that plaintiff's fifth cervical vertebra had subluxed eight millimeters (approximately one-third of an inch). On January 3, 2002, plaintiff was transferred to Thomas Jefferson University Hospital, a spinal center, for further treatment.
On June 25, 2002, plaintiff filed a complaint alleging medical malpractice against Fuld and several of his treating physicians. Depositions of numerous physicians resulted in what plaintiff claims were discrepancies in the factual testimony concerning the manner in which events unfolded at the hospital. It was also learned during discovery that the cervical X-rays initially taken could not be found. These X-rays included a lateral view of plaintiff's neck, which might have demonstrated whether there was displacement of the C-5 vertebral body prior to removal of the extubation tube. Because of the missing X-rays and purported factual discrepancies, plaintiff sought Fuld's "confidential" *939 peer review committee report.[3] The hospital refused and plaintiff moved to compel production. On June 2, 2003, the judge issued a letter opinion stating in pertinent part: "The court has reviewed this document and has reviewed the cases previously submitted by counsel and orders and directs that these materials be turned over to plaintiff's counsel as part of discovery." No further reason was given.
On appeal, plaintiff first contends that he is entitled, without a showing of compelling need, to the entire report including facts and opinions because Fuld has made "no showing that the public has some interest in keeping [it] confidential" and the "persons who were involved in the peer review process do not need confidentiality since their identities have been revealed in discovery." Essentially, plaintiff's initial argument is that there is no public policy reason justifying the maintenance of confidential hospital peer review evaluations. Alternatively, plaintiff argues that, even if there is justification for maintaining confidentiality of hospital peer review evaluations, he nevertheless has demonstrated a compelling need to warrant discovery of the entire report.
Fuld and amicus curiae New Jersey Hospital Association (the Association) respond, claiming that public policy requires that the entirety of hospital peer review evaluations be kept confidential, otherwise hospitals will not engage in such reviews. Both Fuld and the Association assert that pure factual material, as well as information reflecting a peer review committee's deliberative process, specifically, opinions, analysis, and factual findings are entitled to confidentiality where the competing demand by plaintiff is private in nature. They assert that the public interest in improving the quality of health care favoring confidential, frank, and productive self-evaluations is overriding, especially here, where plaintiff can obtain viable expert opinions. They further contend that plaintiff has not shown a compelling need for the information contained in the report.
We have reviewed, in camera, the subject peer review committee report. Without disclosing its contents, we note and at oral argument Fuld conceded, that the first paragraph is purely factual material, apparently gleaned from the hospital report, while the remaining two paragraphs contain factual findings and opinions that are deliberative in nature. Additionally, Fuld conceded that the sentence making up the entire fourth line of the last paragraph contains information that could potentially lead to discovery of pertinent information. With this description in mind, we examine the underlying principles that guide our determination of the issues presented on this appeal.
Generally, a party "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." R. 4:10-2(a). Plaintiff places heavy reliance on Payton v. New Jersey Turnpike Authority, 148 N.J. 524, 691 A.2d 321 (1997), in support of his contention that hospitals should not be entitled to maintain confidential peer review evaluations. Fuld and the Association counter, relying in part on the holding in McClain v. College Hospital, 99 N.J. 346, 492 A.2d 991 (1985). Both cases are dispositive.
In Payton, the plaintiff brought suit under the Law Against Discrimination (LAD) against her employer and two supervisors, alleging sexual harassment. Plaintiff sought to discover her employer's confidential internal investigation for the purpose of establishing the employer's liability *940 for its failure to respond to her complaints. The Payton Court analogized that it, like the Court in Dixon v. Rutgers, the State University of New Jersey, 110 N.J. 432, 541 A.2d 1046 (1988), a LAD case concerned with the disclosure of the defendant's confidential tenure investigation, was dealing with the tension between two competing public interests, one favoring disclosure and the other favoring confidentiality. Payton, supra, 148 N.J. at 541, 691 A.2d 321. Identifying the existence of a public interest to "protect the confidentiality of those involved in the investigation if a loss of confidentiality would otherwise undermine the efficacy of investigations," the Payton Court fashioned a "conditional privilege" rather than a "blanket privilege," which, on application, permits the trial court to supervise discovery and protect confidentiality by procedures, short of suppression, which "may include redaction, issuance of confidentiality or gag orders, and sealing of portions of the record," when a competing public interest favors disclosure. Id. at 542, 691 A.2d 321.
Payton also examined the privilege of self-critical analysis in the context of competing public interests, concluding that, although it deserved "substantial consideration when a court balances a party's need to know against another party's need for confidentiality," it too "does not require the protection of a broad privilege as opposed to a balancing of interests." Id. at 546, 691 A.2d 321. The Court stated:
We decline to adopt the privilege of self-critical analysis as a full privilege, either qualified or absolute.... Instead, we perceive concerns arising from the disclosure of evaluative and deliberative materials to be amply accommodated by the "exquisite weighing process" that our courts regularly undertake when determining whether to order disclosure of sensitive documents in a variety of contexts.
[Id. at 545, 691 A.2d 321 (emphasis added) (citations omitted).]
Plaintiff's assertion that peer committee evaluations in all instances should be open to the public runs afoul of the holding in Payton as it fails to take into consideration the public interest favoring nondisclosure of self-criticism and the associated "conditional privilege" announced in Payton. Instead, Payton makes it clear that a "case-by-case balancing approach" is required when considering confidentiality of internal investigative reports such as the peer committee report that is the subject of this appeal. Id. at 549, 691 A.2d 321.
Balancing the competing interests, we note initially that plaintiff's right to discover information concerning his care and treatment arises from his private interest in prosecuting a personal injury malpractice suit. On the other hand, Fuld's right to maintain the confidentiality of its peer review committee report embraces a public interest to improve the quality of care and help to ensure that inappropriate procedures, if found, are not used on future patients. Thus, here, unlike Payton, we are required to balance the private interest of a patient against the public interest of a hospital. Therefore, plaintiff's interest in disclosure does not have the "strong... reflection of important public policies, to outweigh ... confidentiality concerns under most, if not all, circumstances." Id. at 548, 691 A.2d 321. Nevertheless, patients have a right to know what treatment was received and what happened to them while in a hospital. See N.J.S.A. 26:2H-12.8c. Moreover, plaintiffs have a right to discover the location of critical information, which would logically be expected to be in the possession of an adversary but is missing for some unexplained reason.
*941 In McClain, supra, 99 N.J. 346, 492 A.2d 991, the administratrix of a patient's estate brought a malpractice suit against the defendant hospital for the patient's wrongful death. Plaintiff, who did not have an expert report, sought release of documents compiled by the State Board of Medical Examiners. Faced with the Board's claim of confidentiality, the McClain Court observed that "the concerns are similar" with peer review and licensing board investigations because they "invoke[] serious and important questions of public policy deserving careful consideration by the courts." Id. at 359, 492 A.2d 991. Noting that it was hampered because neither the materials sought nor a precise description of those materials were before it, the Court in McClain remanded the case to the trial court, directing it to evaluate the character of the material sought and prescribing the applicable standard:
[The] showing of particularized need that outweighs the public interest in confidentiality of the investigative proceedings, taking into account (1) the extent to which the information may be available from other sources, (2) the degree of harm that the litigant will suffer from its unavailability, and (3) the possible prejudice to the agency's investigation.
[Id. at 351, 492 A.2d 991.]
However, relying on Environmental Protection Agency v. Mink, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973), McClain also made it clear that on remand it expected that the trial court would determine whether any of the contents of the materials sought were "strictly factual," in which event it should "conclude that such information would be reasonably available to the plaintiff, excising matters of opinion or conjecture on the part of the agency members." McClain, supra, 99 N.J. at 363, 492 A.2d 991; see also In re Liquidation of Integrity Ins. Co., 165 N.J. 75, 84-85, 754 A.2d 1177 (2000) (holding in part that the deliberative process privilege for inter-or intra-agency communications does not protect purely factual materials).
Unlike the Court in McClain, we have reviewed Fuld's confidential peer review committee report and were informed at oral argument that plaintiff has submitted reports from three experts giving opinions on medical malpractice. We, therefore, exercise our prerogative to decide the issues relating to disclosure.
Notwithstanding Fuld's acknowledgement at oral argument that the first paragraph of the report was purely factual, both Fuld and the Association assert that it should remain confidential unless plaintiff can show that those facts are not available in discovery. They maintain that if we permit discovery of purely factual information, hospitals will leave factual information out of future peer committee reports. They also contend, alternatively, that plaintiff has not shown a compelling reason for disclosure of either the factual or deliberative material. Their contention that pure factual materials should be confidential is contrary to the reasoning in both McClain and Payton.
A plaintiff is unable to determine, without reviewing the factual material contained in a peer review report, whether or not that material has been otherwise available in discovery. Any endeavor by a hospital to prevent the discovery of purely factual medical information would necessarily require it to provide an in-depth in camera comparison, demonstrating to the judge that the same factual material has been provided elsewhere in discovery. No such comparison was provided here. More importantly, the availability of relevant facts from multiple sources has never in and of itself prevented discovery. Oftentimes the comparison of different sources *942 reveals inconsistencies that aid in the search for truth. This is especially true here, where plaintiff asserts discrepancies in the factual deposition testimony of various doctors. It is not unusual to find subtle differences in both testimony and documented facts, which support an argument bearing on credibility.
Additionally, both Payton and McClain focus on the public interest concerns associated with self-critical analysis arising from the disclosure of "evaluative and deliberative materials" as opposed to disclosure of purely factual material. The search for truth is paramount in the litigation process. Kernan v. One Washington Park, 154 N.J. 437, 467, 713 A.2d 411 (1998). Likewise, factual material must be relied upon in self-critical analysis to support deliberative factual findings, conclusions, and opinions. We are not convinced that hospital peer review committees will intentionally leave out purely factual information, which otherwise would provide the basis for their deliberative findings and opinions, simply because it is discoverable. The purely factual material outlined in the first paragraph of Fuld's report is discoverable.
We come to a somewhat different conclusion, with one exception, concerning the disclosure of the deliberative materials in the Fuld peer review report. We address first that portion of the report, specifically the fourth line of the last paragraph, which describes the inability of the committee to resolve an issue because of a specific event. As we previously indicated, the subject sentence contains information that might lead to discovery of information critical to plaintiff's case. We are convinced that Fuld would not be prejudiced by disclosure, notwithstanding its deliberative nature, because the peer review committee has itself been unable to resolve the issue due to the missing information, the possible whereabouts of which is described in the subject sentence. Thus, disclosure might facilitate discovery of information not previously found. Because the information, if found, may supply a critical element in plaintiff's case, we are also satisfied that nondisclosure would result in a high degree of harm to plaintiff. We conclude that the information making up the fourth line of the last paragraph should be disclosed.
Lastly, we address the balance of the information in the report, which can best be described as opinions, analysis, and findings of fact concerning the events that are the subject matter of plaintiff's case. This information qualifies as "evaluative and deliberative materials" embracing (1) opinions that would ordinarily be obtainable from medical experts or (2) factual findings that are solely within the province of the fact finder. Plaintiff asserts that various discrepancies in factual deposition testimony and the missing cervical X-ray establish a compelling reason for disclosure. We disagree.
Although plaintiff's expert reports have not been made part of the appellate record, both plaintiff and Fuld have acknowledged that plaintiff has obtained and supplied opinions from three separate experts supporting his claim of medical malpractice. More importantly, plaintiff's own justification for disclosure is limited to discrepancies in factual testimony, and a missing document. We are convinced that by permitting discovery of the purely factual material contained in the report and the specific deliberative information, which might lead to discovery of critical evidence, plaintiff's compelling needs have been addressed. We likewise are convinced that the committee's findings of fact are of no use to plaintiff, as such findings are within the sole province of the jury. Moreover, disclosure might discourage a peer *943 review committee from making factual findings because such findings often include a determination of what is credible.
We reverse the order disclosing the entire report but affirm as to certain portions. On remand, the Law Division should disclose the first full paragraph of Fuld's confidential peer committee report as well as the sentence making up the fourth line of the last paragraph. The remainder of the report shall remain confidential and not subject to discovery.
Reversed in part, affirmed in part, and remanded for further proceedings consistent with this opinion.
NOTES
[1] Improperly pleaded as Helene Fuld Medical Center.
[2] As Gilbert Christy suffered the accident and asserted injury, we will refer to him as "plaintiff."
[3] Plaintiff also sought other discovery unrelated to this appeal.