NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1421-15T3

PATRICIA T. CONN, as Executrix
ad Prosequendum of the Estate
of David W. Conn, deceased, and
PATRICIA T. CONN, individually
and per quod,

    Plaintiffs-Respondents,

v.

BABYLIN REBUSTILLO, an
individual, RACHAEL LOAHR,
an individual, and NEWTON
MEMORIAL HOSPITAL, a business
entity, a/k/a NEWTON MEDICAL
CENTER,

    Defendants-Appellants.

---

| APPROVED FOR PUBLICATION |
| :---: |
| **May 4, 2016** |
| **APPELLATE DIVISION** |

Argued April 12, 2016 — Decided May 4, 2016

Before Judges Espinosa, Rothstadt and Currier.

On appeal from Superior Court of New Jersey, Law Division, Sussex County, Docket No. L-452-14.

Peter A. Marra argued the cause for appellants (Schenck, Price, Smith & King, LLP, attorneys; Mr. Marra and Sandra Calvert Nathans, on the brief).

Paul R. Garelick argued the cause for respondents (Lombardi & Lombardi, P.A., attorneys; Mr. Garelick, on the brief).

The opinion of the court was delivered by

ESPINOSA, J.A.D.

The Patient Safety Act (PSA), N.J.S.A. 26:2H-12.23 to -12.25, establishes an absolute privilege for two categories of documents. N.J.S.A. 26:2H-12.25(f) (subsection (f) privilege) applies to the first category, which consists of documents received by the Department of Health (the Department) pursuant to the mandatory reporting requirement, N.J.S.A. 26:2H-12.25(c) (subsection (c)) or the voluntary disclosure provision, N.J.S.A. 26:2H-12.25(e) (subsection (e)). N.J.S.A. 26:2H-12.25(g) provides a similar privilege (subsection (g) privilege) to a second category of documents, developed as part of a "self-critical analysis" that might never be provided to the Department. In this interlocutory appeal, we review the statutory criteria and scope of the subsection (f) privilege and clarify the distinction between the thresholds for the application of the subsection (f) and subsection (g) privileges.

David W. Conn, the husband of plaintiff Patricia T. Conn, was a patient at defendant Newton Medical Center (NMC) when he fell from his hospital bed, suffered a "severe intracerebral hemorrhage" and subsequently died.[1] As a result, NMC was

_____

[1] Plaintiff brought this medical malpractice case against NMC, Babylin Rebustillo, R.N. and Rachel Loahr, a nursing assistant,
(continued)

required to prepare a root cause analysis (RCA) of the event and file its report with the Department. During the course of discovery in this medical malpractice action, plaintiff filed a motion to compel discovery of the RCA, and defendants filed a cross-motion for a protective order. The trial judge granted plaintiff's motion to compel in part, requiring defendants to provide the "underlying facts" included in the RCA, and denied defendants' motions for a protective order and reconsideration. We granted defendants leave to appeal from that order and now reverse.

## I.

In support of their motion for a protective order, defendants submitted a three-page certification from Diane Lawson, the hospital's insurance manager, which stated she was authorized to make the certification on behalf of NMC and provided that:

> 6. In the instant matter, a Root Cause Analysis Report relating to the plaintiff was prepared by a specified group of employees of NMC designated as the team involved in this event. The team included medical professionals of various disciplines with appropriate competencies to conduct the root cause analysis for this event. In addition, the team presented the root cause

---

(continued)
(collectively defendants) individually and as executrix and administrator ad prosequendum of her husband's estate.

analysis document to NMC's patient safety committee.

. . . .

8. <u>As required</u> under the Patient Safety Act and its regulations, NMC <u>submitted the Root Cause Analysis to the New Jersey Department of Health and Senior Services</u>.

9. This document was generated for the sole purpose of complying with the mandatory reporting requirements of the Patient Safety Act. This document was not generated for purposes of utilization review assessment or quality assurance assessment.

[(Emphasis added).]

The trial court found the RCA was "generated for the specific purpose of complying" with the mandatory reporting requirement and was filed with the Department. There is no evidence in the record that the Department rejected the RCA or found it deficient in any regard. Nonetheless, the trial court ordered disclosure of the "underlying facts" of the RCA. The order also compelled defendants "to provide any and all documents previously withheld on the basis that such documents were protected as a [RCA]."

In their appeal, defendants argue the trial court's interpretation of the PSA was erroneous. They contend the RCA was not discoverable because it was "prepared as part of NMC's self-critical analysis," N.J.S.A. 26:2H-12.25(g), and "for the

purposes of reporting the event to regulators." Plaintiff acknowledges that if the report prepared by NMC qualifies as one prepared and submitted in compliance with the PSA mandatory reporting requirement, it is protected by the absolute privilege. However, she contends Lawson's certification was inadequate to establish that defendants complied with PSA regulations. Plaintiff asserts that because the RCA and the process through which it was created did not satisfy the PSA, the trial court correctly applied the common law standard we found applicable to a peer review committee report in Christy v. Salem, 366 N.J. Super. 535 (App. Div. 2004). In short, plaintiff argues that the hospital must show it fully complied with all applicable regulations before the RCA received by the Department is protected by privilege.

## II.

In reviewing trial court decisions related to matters of discovery, we apply an abuse of discretion standard. C.A. ex rel. Applegrad v. Bentolila, 219 N.J. 449, 459 (2014); Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011). We "generally defer[] to a trial court's disposition of discovery matters unless the court has abused its discretion or its determination is based on a mistaken understanding of applicable law." Applegrad, supra, 219 N.J. at 459 (citation omitted).

When the question presented is a legal issue, such as the construction of a statute, our review is de novo. Kaye v. Rosefielde, 223 N.J. 218, 229 (2015). This is such a case.

The trial court's statement of reasons reflects its reliance upon our decision in Christy,[2] a case in which we considered whether a peer review committee report prepared regarding a 2002 injury was discoverable. 366 N.J. Super. at 541; see N.J.S.A. 26:2H-12.23. The document was created well before the effective date of the PSA and, clearly, was not submitted to the Department pursuant to subsections (c) or (e) of the PSA. We applied a common law standard, adopting a balancing test of the competing interests at issue — the "plaintiff's right to discover information concerning his care and treatment" for purposes of his litigation and the "public interest to improve the quality of care and help to ensure that inappropriate procedures, if found, are not used on future patients." Id. at 541. We ordered the disclosure of the "purely factual" contents of the peer review report, but determined that "evaluative and deliberative materials" within the report that contained the hospital's "opinions, analysis, and findings of fact" were not discoverable. Id. at 543-45.

---

[2] The court also relied upon our decision in C.A. ex rel. Applegrad v. Bentolila, 428 N.J. Super. 115 (App. Div. 2012), which was reversed by the Supreme Court, 219 N.J. 449 (2014).

The trial court's reliance upon <u>Christy</u>'s common law standard was misplaced. The discovery issue here is governed by the provisions of the PSA. The questions presented concern the threshold for the application of the absolute privilege granted by <u>N.J.S.A.</u> 26:2H-12.25(f)[3] and whether that privilege protects all of the RCA from disclosure.

In interpreting a statute, "our essential task is to understand and give effect to the intent of the Legislature." <u>Pizzullo v. N.J. Mfrs. Ins. Co.</u>, 196 <u>N.J.</u> 251, 263-64 (2008). We turn first "to the plain language of the statute," <u>In re Young</u>, 202 <u>N.J.</u> 50, 63 (2010), which is the "clearest indication of a statute's meaning." <u>G.S. v. Dep't of Human Servs.</u>, 157 <u>N.J.</u> 161, 172 (1999). We seek further guidance only when "the Legislature's intent cannot be derived from the words that it has chosen." <u>Pizzullo</u>, <u>supra</u>, 196 <u>N.J.</u> at 264.

The explicit goal of the PSA was to improve the safety of patients by obtaining and analyzing information that will lead to the dissemination of effective practices and reduce systems failures. <u>N.J.S.A.</u> 26:2H-12.24(f).[4] The Legislature recognized

---

[3] At oral argument, it was undisputed that the RCA was received by the Department. NMC also agreed that an absolute privilege would apply to the document as it was received by the Department pursuant to subsection (c).

[4] The information so obtained is also used "to exercise oversight," with "primary emphasis on assuring effective

(continued)

it was "critical" to encourage disclosure by "creat[ing] a non-punitive culture that focuses on improving processes rather than assigning blame." N.J.S.A. 26:2H-12.24(e). It sought to accomplish this goal "[b]y establishing an environment that both mandates the confidential disclosure of the most serious, preventable adverse events, and also encourages the voluntary, anonymous and confidential disclosure of less serious adverse events, as well as preventable events and near misses." N.J.S.A. 26:2H-12.24(f). To ensure the confidentiality of both the mandatory disclosures made pursuant to N.J.S.A. 26:2H-12.25(c) and the voluntary disclosures that are "encouraged" by N.J.S.A. 26:2H-12.25(e),[5] those disclosures are protected by an absolute privilege. N.J.S.A. 26:2H-12.25(f).

---

(continued)
corrective action by the facility or health care professional." N.J.S.A. 26:2H-12.25(f). Use of the information for other purposes is limited by statute. Ibid.

[5] N.J.S.A. 26:2H-12.25(e)(1) provides:

> A health care professional or other employee of a health care facility is encouraged to make anonymous reports to the department . . . in a form and manner established by the commissioner, regarding near-misses, preventable events, and adverse events that are otherwise not subject to mandatory reporting pursuant to subsection c. of this section.
>
> [Emphasis added.]

The mandatory reporting requirement is established in N.J.S.A. 26:2H-12.25(c), which states: "A health care facility shall report to the department . . . in a form and manner established by the commissioner, every serious preventable adverse event that occurs in that facility." The circumstances of David Conn's death clearly fall within the definition of a "serious preventable adverse event." N.J.S.A. 26:2H-12.25(a); see N.J.A.C. 8:43E-10.6(g)(4) (stating serious preventable adverse events include "[p]atient . . . death . . . associated with a fall while in a health care facility").

The absolute privilege afforded to documents submitted to the Department pursuant to the mandatory requirement is established by N.J.S.A. 26:2H-12.25(f), which provides:

> Any documents, materials, or information received by the department . . . pursuant to the provisions of subsection[] c. . . . of this section concerning serious preventable adverse events . . . shall not be:
>
> 1. subject to discovery or admissible as evidence or otherwise disclosed in any civil, criminal, or administrative action or proceeding. . . .
>
> [Emphasis added.]

See also N.J.A.C. 8:43E-10.9(a).

Although the report is to be "in a form and manner established by the commissioner," N.J.S.A. 26:2H-12.25(a) and

(e), receipt of the documents by the Department pursuant to the two reporting provisions is sufficient to trigger the absolute privilege as to <u>all</u> documents so received. The plain language of the statute does not condition the privilege upon the satisfaction of any other criteria. Further, the statute provides no rationale or standard for parsing the contents of the documents, allowing for some portions to be privileged and others not privileged. This straightforward, easily identifiable trigger and application of the privilege is consistent with the legislative goal of protecting the confidentiality of disclosures made to the department — whether mandated, voluntary or even anonymous — so that a body of knowledge may be created to improve the safety of patients.

When the information sought to be protected is not submitted to the Department, the path to a privilege is different. <u>See</u> <u>Applegrad</u>, <u>supra</u>, 219 <u>N.J.</u> at 467. <u>N.J.S.A.</u> 26:2H-12.25(g) establishes the "self-critical analysis" privilege for internal documents that are the product of an "investigative process that may or may not lead to . . . reporting" to the Department. <u>Applegrad</u>, <u>supra</u>, 219 <u>N.J.</u> at 467. Subsection (g) provides in pertinent part:

> Any documents, materials, or information <u>developed</u> by a health care facility <u>as part of a process of self-critical analysis conducted pursuant to subsection b. of this</u>

<u>section</u> concerning preventable events, near-misses, and adverse events, including serious preventable adverse events, and any document or oral statement that constitutes the disclosure provided to a patient or the patient's family member or guardian pursuant to subsection d. of this section, shall not be:

> (1) subject to discovery or admissible as evidence or otherwise disclosed in any civil, criminal, or administrative action or proceeding . . . .

[Emphasis added.]

Thus, while subsection (f) shelters all documents that are "received by the department" from discovery, the privilege afforded to internal documents by subsection (g) only attaches if the contents are "developed . . . as part of a patient safety plan" that complies with the requirements set forth in <u>N.J.S.A.</u> 26:2H-12.25(b). <u>Applegrad</u>, <u>supra</u>, 219 <u>N.J.</u> at 469. The minimum requirements for the patient safety plan include:

> (1) a patient safety committee, as prescribed by regulation;

> (2) a process for teams of facility staff, which teams are comprised of personnel who are representative of the facility's various disciplines and have appropriate competencies, to conduct ongoing analysis and application of evidence-based patient safety practices in order to reduce the probability of adverse events resulting from exposure to the health care system across a range of diseases and procedures;

> (3) a process for teams of facility staff, which teams are comprised of

11

> personnel who are representative of the facility's various disciplines and have appropriate competencies, to conduct analyses of near-misses, with particular attention to serious preventable adverse events and adverse events; and
>
> (4) a process for the provision of ongoing patient safety training for facility personnel.
>
> [N.J.S.A. 26:2H-12.25(b)(1)-(4).]

The document at issue in Applegrad was a memorandum prepared by a hospital administrator, before administrative regulations regarding the PSA were adopted, entitled "Director of Patient Safety Post-Incident Analysis." The document memorialized a "round table" discussion conducted as part of the hospital's investigation of the birth that gave rise to the medical malpractice claim. 219 N.J. at 452, 455. It was asserted that the document, along with five others, was privileged under subsection (g).[6] Id. at 455. Therefore, the threshold issue was whether the documents were "developed . . . as part of a process of self-critical analysis conducted pursuant to subsection b." Id. at 467 (quoting N.J.S.A. 26:2H-25(g)(1)).[7] In contrast, the only pre-requisite for the

---

[6] Initially, the hospital sought to have the document reviewed pursuant to the balancing test set forth in Christy.

[7] Because Applegrad arose after the passage of the PSA but before implementing regulations were adopted, the Court analyzed

(continued)

subsection (f) privilege is that the documents were "received by" the Department pursuant to either the mandatory reporting requirement followed here, subsection (c), or by the voluntary reporting provision, subsection (e). Ibid. Thus, the analysis conducted by the Court in Applegrad as to whether the hospital's procedure substantially complied with the procedures required by the PSA is unnecessary and inapplicable here. Id. at 473.

Our review of the plain language of the statute, which comports with the legislative goals articulated, leads us to conclude the privilege established by subsection (f) is not subject to review to determine whether the health care facility complied with the "process requirements" set forth in the PSA. See Applegrad, supra, 219 N.J. at 467-68 (citation omitted). The privilege afforded by N.J.S.A. 26:2H-12.25(f) is absolute, covering all "documents, materials, or information received by the department" pursuant to N.J.S.A. 26:28-12.25(c) or (e) and attaches to those items upon receipt by the Department. Because plaintiff retains the right to discover facts through conventional means of discovery, N.J.S.A. 26:2H-12.25(k), this

---

(continued)
the discoverability of the document at issue pursuant to the terms of the PSA itself and did not impose the requirements included in the regulations. Applegrad, supra, 219 N.J. at 468-69.

A-1421-15T3

conclusion does not substantially hamper the plaintiff's quest for pertinent factual information and preserves the environment established by the Legislature in which mandatory disclosures are kept confidential. N.J.S.A. 26:2H-12.24(f).

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION