**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1207-22

ESTATE OF FRANK P. LAGANO,

     Plaintiff-Appellant,

v.

BERGEN COUNTY PROSECUTOR'S
OFFICE,

     Defendant-Respondent,

and

MICHAEL MORDAGA,

     Defendant.

_____

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

$1,297,522.20,

     Defendant,

and

ESTATE OF FRANK P. LAGANO,

     Defendant-Appellant.

_____

Argued September 11, 2023 – August 26, 2024

Before Judges Gilson, DeAlmeida, and Berdote Byrne.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-0093-16.

Geoffrey F. Sasso argued the cause for appellant (Buchanan Ingersoll & Rooney, PC, attorneys; Geoffrey F. Sasso and Nicholas S. Pradaxay, on the briefs).

David J. Pack argued the cause for respondent Bergen County Prosecutor's Office (Hanrahan Pack, LLC, attorneys; David J. Pack, of counsel and on the brief).

Jose A. Calves argued the cause for respondent State of New Jersey, Office of the Attorney General, Division of Criminal Justice (Brown & Connery, LLP; attorneys; Kathleen E. Dohn and Jose A. Calves on the brief).

PER CURIAM

     In this appeal of the trial court's denial for entry of an order pursuant to the five-day-rule, R. 4:42-1(c), plaintiff, the Estate of Frank P. Lagano (Estate), asks us to consider whether the trial court erred in restricting newly substituted counsel for the Estate from obtaining discovery previously provided to the Estate's prior counsel and marked "Confidential Attorney's Eyes Only" (CAEO)

2

pursuant to a protective order, and erred in limiting the scope of issues on appeal. Counsel for the Estate argues he is entitled to the same discovery produced to the Estate's prior counsel pursuant to both Rule 1.16(d) and the protective order. Counsel also argues the trial court erred in limiting the scope of the matters on appeal to exclude certain prior interlocutory orders. We agree and vacate the order denying production of the CAEO materials to substituted counsel. We remand this matter to the trial court for entry of an order and an amended protective order consistent with our opinion.

I.

This case has a torturous procedural history, some of which is necessary to comprehend the basis for our conclusions. All matters spawn from what was known as "Operation Jersey Boyz," an extensive organized crime investigation. Est. of Lagano v. Bergen Cnty. Prosecutor's Off., 2023 U.S. Dist. LEXIS 50710, at *4, Docket No. 12-cv-5441-KSH-CLW (D.N.J Mar. 24, 2023).

The Wiretap Litigation in Passaic County.

In 2004, a state criminal court in Passaic County issued wiretaps for use by the Attorney General's Office (State) and the Bergen County Prosecutor's Office (Bergen) in a joint criminal investigation into alleged mob-related activity called "Operation Jersey Boyz." As a result of that investigation, Frank

Lagano, Sr. (Senior)[1] was arrested and charged with, among other crimes, racketeering, promoting gambling, criminal usury, and conspiracy. See Est. of Lagano v. Bergen Cnty. Prosecutor's Off., 769 F.3d 850, 852 (3d Cir. 2014).

In a December 14, 2006 order and sealed opinion, a judge suppressed the "Jersey Boyz" wiretaps, communication data warrants, and search warrants. The record of these proceedings was also sealed. Bergen appealed and we reversed as to seven warrants, remanded three warrants for further hearings, and affirmed the suppression of sixteen warrants, including three wiretaps referencing Senior. We impounded our opinion, the appellate briefs, and appendices.

The Forfeiture Action in Bergen County.

In January 2005, Bergen initiated a civil forfeiture action in the Law Division against monies seized in the "Jersey Boyz" raids. See State v. $1,297,522.20, No. A-0208-13 (App. Div. Dec. 7, 2015). That sum included $264,428 in cash seized from the residence of Senior and his wife and from their safety deposit boxes at two banks. Senior filed an answer asserting the seized funds were not connected to any criminal activity.

---

[1] We refer to Frank Lagano, Sr., as "Senior" to distinguish him from his son, Frank Lagano, Jr., ("Junior"), the executor of the Estate and, briefly, the Estate's attorney.

On April 12, 2007, Senior was fatally shot in East Brunswick. The Middlesex County Prosecutor's Office (Middlesex) commenced an investigation into his death. Thereafter, the Estate asserted its interest in the seized $264,428 in the forfeiture action.

The forfeiture action was stayed for six years during suppression proceedings and subsequent litigation regarding legal issues stemming from the wiretaps and warrants. After the stay was lifted, the Estate sought discovery, but the State refused to produce documents because they were under seal by prior orders of the Law Division.

In April 2012, the Estate filed a motion to unseal and compel the production of all relevant discovery. Another judge denied the motion and a motion to reconsider. On June 26, 2013, that judge granted summary judgment to Bergen. The Estate appealed and we reversed and remanded, ruling the Estate's submissions created genuine issues of material fact. In re Est. of Lagano, 454 N.J. Super. 59, 67 (App. Div. 2018).

The Federal Action by The Estate.

In August 2012, the Estate filed a civil complaint against Bergen in the United States District Court, Docket No. 12-CV-0441, claiming Bergen's release of Senior's status as an informant led to his death. Est. of Lagano, 769 F.3d at

853. Bergen filed a motion to dismiss, which the Federal Court granted, reasoning, in part, that Bergen was acting on behalf of the State and had sovereign immunity. On October 15, 2014, the Third Circuit Court of Appeals vacated the dismissal and remanded to the matter to the District Court.

The Passaic County Discovery Matter.

In December 2015, pursuant to an order of a federal Magistrate Judge, the Estate returned to the Law Division in Passaic County that had decided the issue of the wiretaps and filed a motion to unseal the previously sealed records. Estate of Lagano v. Bergen Cnty. Prosecutor's Off., Docket No. L–0093–16. The case was reopened for the limited purpose of handling the discovery in the Federal Action and the forfeiture action. Pursuant to Rule 1:38-12, the Estate's motion sought "entry of an order unsealing and compelling the production of all court records and documentary evidence in the Bergen County gambling investigation 'Jersey Boyz,' and all records and evidence relevant to" the forfeiture and federal actions. Oral argument was heard by the original judge and sealed in-camera sessions were held to discuss issues related to the possible disclosure of confidential informants.

In a December 1, 2016 order, the original judge "substantially granted" the motion after reviewing the extensive evidence and history of the case in a

6

sealed opinion. The judge denied the State's motion for reconsideration and issued a revised order on December 15, 2016. We granted motions by the State, Bergen, and Middlesex for leave to appeal and stayed the Law Division's orders and proceedings.

Our 2018 published decision, Estate of Lagano v. Bergen County Prosecutor's Office, 454 N.J. Super. at 65, concluded wiretap disclosure is appropriate for use in a civil forfeiture litigation upon showing of "good cause," which was met by the Estate in this case, but limited any disclosure to the extent that disclosure may reveal specific confidential informants. We remanded to the trial court for consideration of whether disclosure would reveal a person was a confidential informant for a particular agency in a particular investigation during a particular period. Ibid. We also remanded for entry of a broader protective order in both the forfeiture and federal actions. Id. at 86.

On December 21, 2018, the trial court entered two orders: the first ordered Bergen and the State to produce certain documents to the Estate's counsel, including wiretap applications, wiretap content, content for three wiretaps Senior was involved in, two prior orders from the trial court, "[a]pproximately six inches of documents provided by counsel to [Bergen] in the Forfeiture Action to the [Division of Criminal Justice] following the initial conference in

this matter on September 5, 2018," and "[t]ranscripts of the several [impounded] hearings before [the trial judge] between 2006 and 2008 . . . . "

The trial court also entered a protective order signed by the parties and all counsel of record. Specifically, the order excluded Junior from viewing the CAEO documents. It also provides:

> 1. All signatories to this Order, or any party represented by a signatory to this Order, shall have the right to designate as "Confidential, Attorneys' Eyes Only" ("CAEO") any information, document, thing or portion of any document or thing that is produced pursuant to the Order Governing Production of Certain Documents.
>
> . . . .
>
> 3. All CAEO material produced under the Order Governing the Production of Certain Documents and in compliance with this Order are for attorneys' eyes only and limited to the signatories to this agreement and employed attorneys by them, whether partners, associates or of counsel. This specifically excludes [Junior]. If any attorney has the need to disclose any CAEO material to a non-attorney, expert and/or consultant, then they shall make application before the Federal Magistrate seeking permission to do so.
>
> 4. CAEO material shall be used only by individuals permitted access to it under Paragraph 3. CAEO material, copies thereof, and the information contained therein, shall not be disclosed in any manner to any other individual, unless and until the Federal Court or this Court orders such disclosure.

A-1207-22

5. Should the State Forfeiture Action become active, then nothing herein shall deprive [Bergen] or Estate from making application therein to address disclosure and use of CAEO materials beyond counsel.

The Estate filed a motion for reconsideration concerning the proviso in the protective order prohibiting Junior from viewing the CAEO documents, which the trial court denied, reasoning it was clear Junior was "a substantial fact witness and that his credibility is in substantial issue" in the forfeiture action and federal action.

On March 27, 2019, Rudie O. Weatherman (Weatherman), who was a signatory to the Protective Order, was substituted as counsel for the Estate in the forfeiture action. On May 1, 2019, the trial court entered an order regarding the transfer of CAEO materials from Mr. Kleiner, the Estate's prior counsel, to Weatherman and ordered Kleiner to destroy all "copies of the CAEO already in his possession as reflected and identified on the document shown to counsel on the record . . . ."

On April 14, 2021, the Estate filed a motion to dismiss the forfeiture action, citing a failure to prosecute, laches, and prejudicial delay, which the trial court denied.

On June 28, 2021, an alleged settlement was reached in the forfeiture action. Judge O'Dwyer issued an order on April 7, 2022, binding the parties to

"the settlement agreement as set forth in the Consent Order to Forfeit Interest in Property as to the Estate of Lagano . . . ." Junior refused to sign the settlement agreement, which was necessary as he is the executor of the Estate.

Weatherman informed Judge O'Dwyer he was terminated as counsel for the Estate two weeks later. Junior, acting as counsel for the Estate, filed an appeal of the April 7, 2022 order enforcing the settlement agreement in the forfeiture action and included the interlocutory order of April 14, 2021 denying dismissal of the complaint. Bergen filed a motion to disqualify Junior from serving as counsel in the forfeiture action. In opposition to the motion, Junior certified: "[a]bsolutely none of the 'Confidential Attorneys' Eyes Only' documents relate to or are required to be used in the pending Appeal that is before this Court that has been filed by the undersigned . . . . "

We disqualified Junior from representing the Estate on June 1, 2022, and representation was assumed by Geoffrey F. Sasso (Sasso) of Buchanan Ingersoll & Rooney, PC.

On September 30, 2022, Sasso filed a notice of appearance as counsel for the Estate in both the discovery case in Passaic County and the appeal of the forfeiture action. Sasso submitted to the Law Division a proposed five-day order withdrawing Weatherman as the Estate's counsel. The proposed order required

Weatherman to turn over the Estate's entire file, including the documents previously provided to Weatherman pursuant to the protective order and designated as CAEO.

Weatherman is alleged to have refused to turn over the entire case file materials or sign a substitution of attorney unless he received compensation pursuant to his contingency fee agreement with the Estate. Weatherman opposed entry of the Order and argued he was not authorized to turn over the CAEO materials because they were provided pursuant to the protective order and only to its signatories, and he could not transmit the CAEO information without a court order. He also sought an order declaring an attorney's lien had attached to the proceeds of the forfeiture action.

The Estate responded, contending Weatherman was improperly keeping the entire file from the Estate to protect his attorney's lien and contingency fee. In its view, the dispute has nothing to do with Weatherman's fees, but only concerned present counsel's ability to obtain Weatherman's file so it could prepare for the forfeiture action appeal.

On October 5, 2022, Bergen filed an objection to the proposed five-day order. Shortly thereafter, the Division of Criminal Justice (DCJ) also objected to the proposed five-day order. Weatherman filed a reply stating, in part, he was

not wrongfully withholding the file and "the CAEO file should not be transferred until and unless the Appellate Division reverses and remands the civil forfeiture matter. . . ."

On October 31, 2022, the trial court declined to adopt the Estate's proposed order. Noting the only issue before it was whether transfer of the CAEO documents to Sasso as the Estate's new counsel was necessary for him to represent the Estate in the forfeiture action appeal, which concerns the enforcement of the settlement agreement, the trial court denied the application to transfer the CAEO documents. In sum, the trial court ordered the CAEO documents were not to be transferred from Weatherman to Sasso while the appeal of the forfeiture action was pending. However, if we remanded the forfeiture action to the trial court, the Estate could then make an application to transfer the CAEO documents to Sasso. The trial court reasoned that because Junior represented to the court that review of the CAEO documents was not necessary for the forfeiture action appeal, it was not appropriate for the documents to be transferred to Sasso at the present time. The trial court found "the CAEO documents were not needed" in the defense of the forfeiture action before the Appellate Division because it concerns "the circumstances surrounding the settlement" and whether it is enforceable. The trial court also

stated that, although "99 probably point 9 percent of the time an attorney has the entire file," in the circumstances here, where confidential information regarding an organized crime case is contained in the CAEO documents, the unique need to keep these "very confidential" documents classified prevailed. The trial court ordered Weatherman to keep the CAEO documents, stating the documents "shall not be transferred from . . . Weatherman to . . . Sasso at this time since the prosecution of the pending appeal in the civil forfeiture action does not necessitate [their] review . . . ."

On November 21, 2022, the Estate filed a motion for leave to appeal the October 31 order. We granted the Estate's motion to file an interlocutory appeal.

## II.

We review a trial court's discovery rulings pursuant to an abuse of discretion standard of review. Brugaletta v. Garcia, 234 N.J. 225, 240 (2018); Cap. Health Sys., Inc. v. Horizon Healthcare Servs., Inc., 230 N.J. 73, 79-80 (2017). The trial court's determination will not be disturbed "unless the court has abused its discretion or its determination is based on a mistaken understanding of the applicable law." Castello v. Wohler, 446 N.J. Super. 1, 24 (App. Div. 2016) (quoting Rivers v. LSC P'ship, 378 N.J. Super. 68, 80 (App.

13

Div. 2005)).  "When the question presented is a legal issue . . . our review is de novo."  Conn v. Rebustillo, 445 N.J. Super. 349, 353 (App. Div. 2016).

The Estate posits we should apply a de novo standard of review rather than an abuse of discretion standard, arguing although we ordinarily evaluate discovery matters for an abuse of discretion, "[t]he order at issue here is not a discovery order because it denies an attorney access to a client's file and, even if deemed a discovery order, the underlying decision is otherwise based on a mistaken understanding of the applicable law."  Bergen argues the trial court's interlocutory order denying Sasso access to the CAEO documents should be reviewed pursuant to an abuse of discretion standard because this is a matter pertaining to discovery.

The transfer of the CAEO documents is not a discovery issue.  The documents had already previously been produced to the Estate's prior counsel subject to a protective order.  No party is suggesting the Estate is not entitled to the documents.  Rather, Bergen and DCJ argue Sasso, as substituted counsel, is not entitled to the documents.  The interpretation of the protective order, however, is a discovery issue and not purely an interpretation of law.  We apply an abuse of discretion standard of review to a mixed question of law and fact.  Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011).

14

Accordingly, we will not disturb the "trial court's disposition of discovery matters unless the court has abused its discretion or its determination is based on a mistaken understanding of the applicable law." Ibid. (quoting Rivers, 378 N.J. Super. at 80).

We conclude, both pursuant to the plain language of Rule 1.16(d), and pursuant to the language of the protective order, Sasso is entitled to the CAEO documents.

When called to interpret the rules of professional conduct, we start with the plain language, before resorting to the usual canons of statutory construction. See Borteck v. Riker, Danzig, Scherer, Hyland & Perretti LLP, 179 N.J. 246, 252 (2004). We will only deviate from the rule's plain language when the words are ambiguous, Bozzi v. City of Jersey City, 248 N.J. 274, 283 (2021) (quoting Zabilowicz v. Kelsey, 200 N.J. 507, 513 (2009)), have "more than one plausible interpretation," ibid. (quoting DiProspero v. Penn, 183 N.J. 477, 492-93 (2005)), or if the plain meaning would lead to an absurd result. Ibid. See also First Resol. Inv. Corp. v. Seker, 171 N.J. 502, 511 (2002). RPC 1.16 governs what attorneys must do after the termination of their representation of a client. RPC 1.16(d) provides:

> Upon termination of representation, a lawyer shall take
> steps to the extent reasonably practicable to protect a

A-1207-22

client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law. No lawyer shall assert a common law retaining lien.

Weatherman is correct in stating the protective order precluded him from surrendering the file to Sasso without a court order. Nevertheless, the trial court erred in not allowing Sasso to receive the CAEO documents because it did not find any reason to preclude Sasso from having the documents as required by RPC 1.16(d). In fact, it specifically found there was no concern with Sasso, his ability to abide by the terms of the protective order, or concerns he would violate the protective order by showing the documents to Junior.

The trial court instead found disclosure of the CAEO materials was not necessary, and that it would be imprudent to disclose such information given Junior's belief that his father was murdered because Senior's cooperation in the "Jersey Boyz" investigation was leaked. However, the issue before the court was not whether Junior was entitled to the documents but whether Sasso, the Estate's new counsel, was entitled to the same documents provided to the Estate's prior counsel pursuant to Rule 1:16(d) and the protective order.

16

Sasso argued candidly to the trial court and before us that he does not know whether he needs the documents to defend the appeal of the motion to enforce the settlement because he does not know what the CAEO documents contain. The defendants have the documents and Sasso does not, although they were produced to the Estate in this matter. Sasso is entitled to the same access Weatherman had to the documents, subject to the protective order that continues to exclude Junior from seeing the documents, so he may determine whether any of the documents are pertinent to the appeal.

The transfer of the CAEO documents from Weatherman to Sasso does not violate the terms of the 2018 protective order. Of note, the entire file was previously transferred between counsel in 2019 when Weatherman became counsel for the Estate.

Bergen's argument that Junior stated the CAEO documents were not necessary for the appeal ignores it was successful in disqualifying Junior because the protective order allows any subsequent counsel representing the Estate to have access to the CAEO documents, as long as it is a signatory to the protective order and agrees to abide by the document.

The trial court also erred in finding the CAEO documents were not necessary for the adjudication of the appeal in the forfeiture action. At the time

17

the protective order was originally entered, the forfeiture action was not active. However, at the time Sasso entered his appearance as the Estate's attorney, an appeal in the forfeiture action was pending, not only of the order to enforce an alleged settlement, but challenging other interlocutory orders that had been previously entered by the trial court. The Estate appealed the enforcement of a purported settlement and raised issues with several of the trial court's interlocutory orders. The filings in the forfeiture action reference orders from the trial court that were based on the review of the CAEO materials: "the May 28, 2021 Order denying the Estate's Motion to Dismiss; the February 25, 2020 CAEO Decision and Order; and the CAEO transcripts of the Law Division's prior ex parte in camera proceedings performed prior to the issuance of the two June 30, 2008 and July 3, 2008 orders." It is possible that these orders may need to be considered, and Sasso cannot adequately represent the Estate in the forfeiture action without them. Moreover, Junior's prior certification that the CAEO documents are not needed to prosecute the forfeiture action appeal cannot bind Sasso. Allowing Sasso access to the CAEO documents, subject to the same strict requirements of the protective order, levels the playing field by allowing access to the CAEO documents to all counsel involved in the appeal, and is consistent with Rule 1-16(d).

A-1207-22

Judicial Estoppel.

Finally, the parties respectively argue that the other party is judicially estoppel from contending the CAEO documents are or are not necessary to the appeal of the forfeiture action. The Estate argues Bergen is judicially estoppel because it previously argued successfully that the CAEO documents were necessary when it opposed the Estate's motion to dismiss for lack of prosecution in the forfeiture action and when it successfully disqualified Junior, the executor of the Estate, as counsel for the Estate in the appeal. In contrast, Bergen and DCJ contend, while Bergen did argue in its motion to disqualify Junior that he may need to review the CAEO documents, the Estate's judicial estoppel argument fails to acknowledge Junior certified the CAEO documents were not needed to effectuate the forfeiture action's appeal.

Judicial estoppel is an equitable doctrine that is designed to "protect 'the integrity of the judicial process.'" Kimball Int'l, Inc. v. Northfield Metal Prods., 334 N.J. Super. 596, 606 (App. Div. 2000) (quoting Cummings v. Bahr, 295 N.J. Super. 374, 387 (App. Div. 1996)). The doctrine provides "[w]hen a party successfully asserts a position in a prior legal proceeding, that party cannot assert a contrary position in subsequent litigation arising out of the same events." Adams v. Yang, 475 N.J. Super. 1, 8 (App. Div. 2023) (alteration in original)

19

(quoting Kress v. LaVilla, 335 N.J. Super. 400, 412 (App. Div. 2000)).  The prior argument or position, however, must have been successful and accepted by the court.  Ibid.  If a prior position was not successful, the asserting party is not bound by it.  Ibid. (quoting Kimball Int'l, Inc., 334 N.J. Super. at 607).

Notably, judicial estoppel is an "extraordinary remedy" that is ordinally reserved for situations in which "a party's inconsistent behavior will otherwise result in a miscarriage of justice."  Kimball Int'l, Inc., 334 N.J. Super. at 608 (quoting Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 365 (3d Cir. 1996)).  "Thus, as with other claim and issue preclusion doctrines, judicial estoppel should be invoked only in those circumstances required to serve its stated purpose, which is to protect the integrity of the judicial process." Ibid.

Judicial estoppel is inapplicable to the present matter.  The trial court did not accept Junior's representations regarding the lack of need for the CAEO documents and unequivocally rejected his argument.  Bergen was successful in disqualifying Junior partially because of Junior's access to the CAEO documents, but largely because he was a material witness in the matter.  There is no lingering miscarriage of justice warranting imposition of judicial estoppel. Adams, 475 N.J. Super. at 9.

Reversed and remanded for entry of an order and amended protective order consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1207-22