LEONE, J.A.D.
*65 The State appeals orders issued December 1 and 15, 2016, unsealing wiretap materials, including intercepted conversations and evidence derived from them, and compelling their disclosure to the Estate of Frank P. Lagano (Estate). We agree with the trial court that disclosure for use in civil litigation is permissible "upon a showing of good cause" under N.J.S.A. 2A:156A-17(c). We disapprove the contrary ruling in In re Disciplinary Proceedings Against Spinelli, 212 N.J. Super. 526, 515 A.2d 825 (Law Div. 1986). We also affirm the court's finding of good cause for disclosure in general.
However, we vacate the orders to the extent they allowed the disclosure of information revealing the roles of confidential informants. We remand for the trial court to consider whether disclosure will reveal a person was a confidential informant for a particular agency, in a particular investigation, during a particular period, or in a particular way, and to consider whether disclosure of such particular information was justified by the Estate's showing. We also remand for entry of a broader protective order.
*66 I.
This appeal relates to "Operation Jersey Boyz," an extensive joint investigation by the Bergen County Prosecutor's Office (BCPO) and the New Jersey State Police. Between August and November 2004, a Passaic County Law Division judge (original judge) issued wiretap orders and communication data warrants. In December 2004, officers under the command of Michael Mordaga, then the BCPO Chief of Detectives, conducted a series of raids which were the culmination of the "Jersey Boyz" investigation. Over forty people were arrested during the raids, including Frank P. Lagano. Lagano was charged *131 with racketeering, promoting gambling, conspiracy to promote gambling, and two counts of criminal usury.
In January 2005, the BCPO initiated a civil forfeiture action in Bergen County against monies seized in the "Jersey Boyz" raids. State v. $1,297,522.20, Docket No. L-0311-05. That included $264,428 in cash seized from the residence of Lagano and his wife and from their safety deposit boxes at two banks. Lagano filed an answer asserting that the seized funds were not connected to any criminal activity.
In a December 14, 2006 order and sealed opinion, the original judge suppressed the "Jersey Boyz" wiretaps, communication data warrants, and search warrants, and "the fruits thereof." The record of these proceedings were sealed. The BCPO appealed and we reversed as to seven warrants, remanded three warrants for further hearings, and affirmed the suppression of sixteen warrants, including each of the three wiretaps that captured or referenced Lagano. We impounded our opinion, as well as the appellate briefs and appendices.
On April 12, 2007, Lagano was fatally shot in East Brunswick. The Middlesex County Prosecutor's Office (MCPO) commenced a still-open investigation into his death. Thereafter, the Estate asserted its interest in the seized $264,428 in the forfeiture action.
*67 The forfeiture action was stayed for six years during the suppression proceedings and subsequent ex parte litigation before the original judge by the BCPO and the Office of the Attorney General (the State) regarding legal issues stemming from the "Jersey Boyz" wiretaps and warrants. After the stay was lifted, the Estate sought discovery. However, the State refused to produce the documentation sought on the grounds it was under seal by the prior orders of the Law Division.
In April 2012, the Estate filed a motion to unseal and compel the production of all relevant discovery. Another Law Division judge denied the motion and a motion to reconsider. On June 26, 2013, that judge granted summary judgment to the BCPO. However, we reversed and remanded, ruling the Estate's submissions created a genuine issue of material fact. State v. $1,297,522.20, No. A-0208-13 (App. Div. Dec. 7, 2015).
Meanwhile, in August 2012, the Estate filed a civil complaint against the BCPO and Mordaga in federal district court, Docket No. 12-CV-0441. The majority of its factual averments were based on allegations made by James Sweeney, a now-deceased former investigator, in a 2010 complaint he filed following his termination by the Division of Criminal Justice (DCJ). See Estate of Lagano v. Bergen Cty. Prosecutor's Office, 769 F.3d 850, 853 & n.2 (3d Cir. 2014).
The Estate's federal complaint alleged the following. Lagano and Mordaga "enjoyed a personal and business relationship," which included socializing and vacationing together, as well as "multiple business ventures." Id. at 852. Lagano was also under investigation for his possible involvement in an organized crime gambling operation by the BCPO, where Mordaga was Chief of Detectives. Ibid. After Lagano was arrested, charged, and had cash and other items seized, Mordaga allegedly brought Lagano to his office and told Lagano that if he retained a certain attorney, "90% of his problems would go away." Ibid. However, Lagano did not take Mordaga's recommendation and instead agreed to serve as a confidential informant for Sweeney. Ibid.
*68 The federal complaint also alleged that, in early 2007, Mordaga showed up unexpectedly at a restaurant where Lagano *132 was having a dinner meeting and again urged Lagano to hire the attorney he had previously recommended, with the assurance that, if Lagano did so, "half his money would be returned and ... [he] would serve no prison time." Ibid. Lagano rejected Mordaga's offer, and their relationship "soured." Ibid. Afterwards, "[BCPO] personnel ... disclosed to alleged members of traditional Organized Crime families ... that [Lagano] had been an informant," and Lagano was shot and killed thereafter. Ibid.
In the Estate's three-count federal amended complaint, count one claimed the disclosure of Lagano's status as a confidential informant established a state-created danger in violation of his due process rights. Ibid. Count two asserted the same claim under the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to 2. Count three alleged unlawful conversion of Lagano's property (the seized $264,428) in violation of the Fourth Amendment and 42 U.S.C. §§ 1983 and 1985. Id. at 853.
The BCPO and Mordaga each filed a motion to dismiss. The federal district court dismissed the Estate's claims on the grounds that the defendants were acting on behalf of the State, that the BCPO had sovereign immunity, that Mordaga had qualified immunity, and that count three was barred by the statute of limitations. Id. at 853-54. On October 15, 2014, the Third Circuit Court of Appeals affirmed the district court's ruling that count three was barred by the statute of limitations, but vacated the dismissal of the state-created danger claim in counts one and two, and remanded to the district court. Id. at 854-61.
In December 2015, pursuant to the order of a federal magistrate judge, the Estate returned to the Law Division in Passaic County and filed a motion to unseal the records the Law Division had sealed. Estate v. BCPO, et al., Docket No. L-0093-16. Pursuant to Rule 1:38-12, the motion sought "entry of an order unsealing and compelling the production of all court records and documentary evidence in the Bergen County gambling investigation 'Jersey *69 Boyz,' and all records and evidence relevant to" the forfeiture and federal actions. Oral argument was heard by the original judge. Sealed in-camera sessions were held to discuss issues related to the possible disclosure of confidential informants.
In a December 1, 2016 order, the original judge "substantially granted" the motion after reviewing the extensive evidence and history of the case in a sealed opinion. The judge denied the State's motion for reconsideration and issued a revised order on December 15, 2016. We granted motions by the State, the BCPO, and the MCPO for leave to appeal and for a stay of the Law Division's orders and proceedings.
II.
The State argues the release of the sealed wiretaps and related evidence to a private litigant for use in a civil action is not authorized by Title III of the Omnibus Crime and Safe Streets Act, 18 U.S.C. §§ 2510 - 2520 (Title III), or New Jersey's Wiretapping and Electronic Surveillance Control Act, N.J.S.A. 2A:156A-1 to -37 ("Wiretap Act" or "Act"). Whether wiretap evidence may be disclosed "is an issue of statutory construction; our review is therefore de novo." State v. Olivero, 221 N.J. 632, 638, 115 A.3d 1270 (2015). We must hew to that standard of review.
Because "this is a case of statutory interpretation," our task " 'is to discern and give effect' to the legislature's intent." State v. Munafo, 222 N.J. 480, 488, 120 A.3d 170 (2015) (citation omitted). "To begin, we look at the plain language of the *133 statute." Ibid. Courts "can also draw inferences based on the statute's overall structure and composition." State v. S.B., 230 N.J. 62, 68, 165 A.3d 722 (2017). "Statutory language is to be interpreted 'in a common sense manner to accomplish the legislative purpose.' " Olivero, 221 N.J. at 639, 115 A.3d 1270 (citation omitted). "We do not support interpretations that render statutory language as surplusage[.]" Burgos v. State, 222 N.J. 175, 203, 118 A.3d 270 (2015). "If the language is unclear, courts can turn to extrinsic evidence for guidance, including a law's legislative history." *70 Munafo, 222 N.J. at 488, 120 A.3d 170. "But a court may not rewrite a statute or add language that the legislature omitted." Ibid.
III.
New Jersey's Wiretap Act generally makes it a crime to "disclose[ ] the existence of an order authorizing interception of a wire, electronic or oral communication or the contents of, or information concerning, an intercepted wire, electronic or oral communication or evidence derived therefrom." N.J.S.A. 2A:156A-19 ; see N.J.S.A. 2A:156A-3(b). Disclosure is only permitted "as specifically authorized pursuant to this act." Ibid.
A.
The Estate invoked two disclosure provisions in the Wiretap Act. Section 15 of the Act provides: "Applications made and orders granted pursuant to this act and supporting papers shall be sealed by the court and held in custody as the court shall direct[.]" N.J.S.A. 2A:156A-15. "They may be disclosed only upon a showing of good cause before a court of competent jurisdiction." Ibid. Section 17(c) of the Act provides: "The contents of any intercepted wire, electronic or oral communication, or evidence derived therefrom, may otherwise be disclosed or used only upon a showing of good cause before a court of competent jurisdiction." N.J.S.A. 2A:156A-17(c). Thus, those provisions allow disclosure of wiretap applications and orders, the contents of intercepted conversations, and the evidence derived therefrom, "upon a showing of good cause." N.J.S.A. 2A:156A-15, -17(c).
The State makes no discernable challenge to the disclosure under section 15 of the wiretap applications and orders. Rather, the State focuses on section 17(c), so we will do likewise.[1]
*71 Section 17(c) has been interpreted in only one published appellate case. State v. Braeunig, 122 N.J. Super. 319, 328-30, 300 A.2d 346 (App. Div. 1973). Referencing section 17(c), as well as criminal discovery provisions of the Act applying an "interests of justice" standard, N.J.S.A. 2A:156A-16, -21, Braeunig stated:
Thus, discovery relating to the contents of intercepted communications and derivative evidence in a pretrial setting is recognized under the New Jersey wiretapping law, and the touchstones for according such discovery are the "interests of justice" and "good cause." These criteria encompass the recognized objectives of liberal pretrial discovery which have become axiomatic in the current administration of criminal justice.
[ Id. at 329, 300 A.2d 346.]
Noting that Braeunig applied section 17(c) in a criminal case, the State *134 argues that section 17(c) does not permit discovery in civil litigation. However, nothing in Braeunig suggested section 17(c) was limited to criminal cases.
More importantly, nothing in the language of section 17(c) restricts it to criminal prosecutions. Rather, its plain language allows disclosure "upon a showing of good cause before a court of competent jurisdiction," namely, the Superior Court, without restriction to criminal cases. N.J.S.A. 2A:156A-17(c) ; see N.J.S.A. 2A:156A-2(h).
Additionally, we note section 17(a) and section 17(b) respectively permit the disclosure of contents and derivative evidence to "investigative and law enforcement officers," and in testimony "in any criminal proceeding in any court of this or another state or of the United States or before any federal or State grand jury." N.J.S.A. 2A:156A-17(a), (b). However, our Legislature did not include any such limitation to criminal matters in section 17(c). " ' "[W]here [the Legislature] includes particular language in one section of the statute but omits it in another section of the same [a]ct, it is generally presumed that [the Legislature] acts intentionally and purposely in the disparate inclusion or exclusion." ' " Cashin v. Bello, 223 N.J. 328, 340, 123 A.3d 1042 (2015) (alterations in original) (citations omitted). Moreover, restricting section 17(c) to disclosure in criminal proceedings risks "rendering [that] part *72 of the statute superfluous." State in Interest of K.O., 217 N.J. 83, 91, 85 A.3d 938 (2014).
In any event, "the best indicator of [legislative] intent is the plain language chosen by the Legislature." State v. Gandhi, 201 N.J. 161, 176, 989 A.2d 256 (2010). "When that language ' "clearly reveals the meaning of the statute, the court's sole function is to enforce the statute in accordance with those terms." ' " Olivero, 221 N.J. at 639, 115 A.3d 1270 (citations omitted).
B.
The State argues Title III does not authorize disclosure to a private litigant of intercepted communications and related wiretap material for use as evidence in a civil action. The State cites 18 U.S.C. § 2517(3), but it governs only disclosures relating to wiretaps secured under "this chapter," namely Title III:
Any person who has received, by any means authorized by this chapter [ 18 USCS §§ 2510 et seq. ], any information concerning a wire, oral, or electronic communication, or evidence derived therefrom intercepted in accordance with the provisions of this chapter [ 18 USCS §§ 2510 et seq. ] may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or of any State or political subdivision thereof.
[ 18 U.S.C. § 2517(3) (emphasis added).]
Indeed, all the provisions of the federal disclosure section are similarly applicable only to knowledge obtained, or conversations intercepted, under "this chapter." 18 U.S.C. § 2517(1) - (8). Nothing in § 2517 suggests it limits disclosure of information derived from a state wiretap order issued under a state statute by a state judge to a state prosecutor, as here. See In re Newsday, Inc., 895 F.2d 74, 77 (2d Cir. 1990) (rejecting "that Congress intended in § 2517... to forbid public access by any other means on any other occasion").[2]
*135 *73 Nonetheless, the State contends we should analogize to § 2517(3) and construe section 17(c) of New Jersey's Wiretap Act to allow disclosure of such information only in criminal cases. The State argues as follows. When originally adopted in 1968, § 2517(3) allowed a person who already had information about a wiretap to give testimony disclosing such fruits of a wiretap only "in any criminal proceeding in any court of the United States or of any State or in any Federal or State grand jury proceeding." P.L. 90-351, Title III, § 802(3), 82 Stat. 217 (1968). In 1970, Congress amended § 2517(3) to allow such disclosure "in any proceeding." P.L. 91-452, Title IX, § 902(b), 84 Stat. 922, 947 (1970). The legislative history indicated the amendment " 'permit[ted] evidence obtained through the interception of wire or oral communications under court order to be employed in civil actions.' " In re Motion to Unseal Elec. Surveillance Evidence, 990 F.2d 1015, 1019 (8th Cir. 1993) (citation omitted) (quoting H.R. Rep. No. 1549, 91st Cong., 2d Sess. 18 (1970), reprinted in 1970 U.S.C.C.A.N. 4007, 4036). Nonetheless, some federal courts ruled the amendment to § 2517(3) allowed only " 'the gatherer of such evidence, i.e., a law enforcement or governmental investigative agency, to be the party making use of the evidence in a civil case,' " and did not "authorize pretrial disclosure to private civil litigants." Id. at 1019-20 (citation omitted); see Nat'l Broad. Co. v. United States Dep't of Justice ("NBC"), 735 F.2d 51, 53-55 (2d Cir. 1984).
The State argues we should reach a similar holding regarding section 17(c) of New Jersey's Wiretap Act. The State's argument assumes section 17(c) of our Wiretap Act should be interpreted as if it were New Jersey's equivalent of § 2517(3) of Title III. We disagree for several reasons.
First, § 2517(3)'s counterpart in the Wiretap Act is not section 17(c) but section 17(b), which provides in pertinent part:
*74 Any person who, by any means authorized by this act, has obtained any information concerning any wire, electronic or oral communication or evidence derived therefrom intercepted in accordance with the provisions of this act, may disclose the contents of such communications or derivative evidence while giving testimony under oath or affirmation in any criminal proceeding in any court of this or another state or of the United States or before any federal or State grand jury [.]
[ N.J.S.A. 2A:156A-17(b) (emphasis added).]
Unlike § 2517(3), section 17(b) was never amended to broaden "any criminal proceeding" to "any proceeding." Nonetheless, that is irrelevant here because the Estate does not seek disclosure under section 17(b), but under section 17(c).
As New Jersey's counterpart to § 2517(3) is section 17(b), there is no reason why we should seek guidance on section 17(c) from § 2517(3), let alone from an amendment Congress adopted years after our Legislature enacted section 17, or from federal cases interpreting that amendment.
Second, section 17(c) is not derived from Title III at all. That is clear from review of the Wiretap Act's legislative history. The sponsors' statement to the bill which became *136 New Jersey's Wiretap Act "explained that it was modeled after two sources: (a) the federal wiretap act, specifically Title III ...; and (b) a model state statute prepared by Professor G. Robert Blakey of the University of Notre Dame Law School. We therefore look to both sources." State v. Terry, 218 N.J. 224, 235-36, 94 A.3d 882 (2014) (citing 192 Leg., S. 943 (Sponsors' Statement) at 13 (Nov. 15, 1968) ); see G. Robert Blakey & James A. Hancock, A Proposed Electronic Surveillance Control Act, 43 Notre Dame L. Rev. 657 (1968).
Generally, our Legislature "modeled [the Wiretap Act] after Title III." State v. Feliciano, 224 N.J. 351, 368, 132 A.3d 1245 (2016). Where the Wiretap Act is modeled after Title III, courts give " 'careful consideration to federal decisions interpreting the federal statute,' " id. at 371, 132 A.3d 1245 (citation omitted), and to the legislative history of the federal statute, State v. Terry, 430 N.J. Super. 587, 598-99, 66 A.3d 177 (App. Div. 2013), aff'd, 218 N.J. 224, 236, 94 A.3d 882 (2014).
*75 However, "New Jersey's wiretap law followed the federal pattern in some respects, but not all." Minter, 116 N.J. at 275, 561 A.2d 570. Where our Legislature chose to adopt provisions in the Wiretap Act that differ in substance from Title III, we must follow the Wiretap Act. See Feliciano, 224 N.J. at 370, 132 A.3d 1245 ; State v. Catania, 85 N.J. 418, 437-38, 427 A.2d 537 (1981).
When Congress enacted Title III in 1968, its disclosure provision, § 2517, had five subsections. P.L. 90-351, Title III, § 802, 82 Stat. 217 (1968). When our Legislature drafted the Wiretap Act later in 1968, it addressed the five subsections of § 2517 in four substantially-similar provisions. Compare 18 U.S.C. § 2517(1) - (2), (3), (4), and (5)with N.J.S.A. 2A:156A-17(a), (b), N.J.S.A. 2A:156A-11, and N.J.S.A. 2A:156A-18, respectively.
In addition to those disclosure provisions of § 2517, our Legislature enacted section 17(c) which allowed disclosure of a wiretap's contents for good cause. As the State admits, section 17(c)'s provision has "no direct federal corollary" in Title III.
Third, our Legislature adopted section 17(c) verbatim from subsection 12(c) of Professor Blakey's model state statute. See Blakey & Hancock, 43 Notre Dame L. Rev. at 678-79. Our Legislature had before it Professor Blakey's article, his proposed statute, and his testimony. Terry, 218 N.J. at 235-36, 94 A.3d 882. Therefore, we look to Blakey's article, rather than Title III, as a source of legislative history of section 17(c). See id. at 236-37, 94 A.3d 882.
Professor Blakey explained that subsection 12(c) "explicitly puts into the system of rigid disclosure and use an essential measure of flexibility. It recognizes that in certain cases it may be permissible to use what was originally gathered for criminal prosecution for other purposes." Blakey & Hancock, 43 Notre Dame L. Rev. at 679 n.51 (citation omitted). Blakey cited one civil use: "Congressional investigations in the past, for example, have found court order[ed] wire taps to be 'vitally important.' " Ibid. (citation omitted). Moreover, Blakey made clear "the range of possible situations where " 'good cause' might be shown under subsection 12(c)
*76 remains obviously large." Ibid. Given that legislative history, there is no reason to suppose our Legislature intended section 17(c) to allow disclosure in only criminal cases.
In any event, section 17(c) addresses the concerns raised in the federal cases the State cites. The federal courts were concerned that reading § 2517(3) to give private litigants an unfettered right to discovery of the contents of wiretaps "would simply ignore the privacy rights of those *137 whose conversations are overheard." NBC, 735 F.2d at 54 ; see Motion to Unseal, 990 F.2d at 1018-19. NBC also stated § 2517(3) allowed disclosure only after it has been "determined that the interests in disclosure outweigh the important privacy interests that Congress sought to protect in Title III." NBC, 735 F.2d at 54 (leaving that determination to the government); cf. Motion to Unseal, 990 F.2d at 1019-20 & n.5 (indicating such disclosure requires court approval).
Section 17(c) addresses those concerns by prohibiting disclosure unless a court finds good cause. The court should consider the privacy rights of those whose conversations are overheard, and the government's interests in non-disclosure, and determine whether those rights and interests are outweighed by the need for disclosure. See In re High Fructose Corn Syrup Antitrust Litig., 216 F.3d 621, 624 (7th Cir. 2000).
Moreover, unlike the federal cases the State cites, in these cases the State is a party to both the forfeiture and federal actions, which arose out of its criminal case, and it has access to the wiretap evidence while the Estate does not. See SEC v. Rajaratnam, 622 F.3d 159, 179 (2d Cir. 2010) (distinguishing its decision in NBC because NBC involved "private disputes" between private parties which were "unrelated to the government's criminal case," and because "there was no relevant informational imbalance in NBC").
C.
Based on its language and legislative history, we conclude section 17(c) allows disclosure of the contents of and evidence *77 derived from a wiretap in a civil proceeding if the Superior Court finds a showing of good cause has been made. Nonetheless, the State cites to Spinelli, a Law Division case, for the proposition that disclosure of wiretap material under section 17(c) is limited to the criminal context. Spinelli, 212 N.J. Super. at 534-35, 515 A.2d 825. However, Spinelli is neither binding on this court nor persuasive.
In Spinelli, the chief of police of a municipality sought a court order to compel the county prosecutor to disclose tape recordings of wiretapped conversations for use by the police chief in support of disciplinary charges against an officer. First, the Law Division stated that section 17(c)"appears to allow disclosure if good cause is established before the Superior Court," but that "[a]n alternate reading of § 17c would mean that disclosure is limited to a court of competent jurisdiction, defined in N.J.S.A. 2A:156A-2h as the Superior Court-excluding administrative proceedings." Id. at 531-32, 515 A.2d 825. However, section 17(c) does not allow disclosure only to the Superior Court; rather, it gives the Superior Court the duty to determine whether there is good cause for disclosure to others, without limiting the type of proceeding.
Second, the Law Division in Spinelli asserted that 18 U.S.C. § 2517(5)"contains what appears to be the substance of" section 17(c), and that under § 2517(5)"the contents may only be used under [ § 2517 ](3)." 212 N.J. Super. at 534-35, 515 A.2d 825. Based on those premises, the Law Division concluded: "the New Jersey 'good cause' provision of § 17c would be limited to criminal proceedings as provided in N.J.S.A. 2A:156A-17b because § 17b[ ] of the state act corresponds to paragraph (3) of § [25]17 of the federal act and the former has not been amended to include civil proceedings." Id. at 535, 515 A.2d 825. However, both premises are incorrect. Section 17(c) has nothing to do with 18 U.S.C. § 2517(5), which addresses the interception of "communications relating to offenses other than those specified in the *138 order of authorization," and whose New Jersey counterpart is N.J.S.A. 2A:156A-18. Further, § 2517(5) does not state that contents can only be used under § 2517(3). 18 U.S.C. § 2517(5) ; see *78 N.J.S.A. 2A:156A-18. In any event, the strictures of § 2517(3) do not apply to section 17(c).
None of the Law Division's reasoning in Spinelli persuades us to alter our interpretation of section 17(c). Therefore, we disapprove Spinelli's contrary interpretation of section 17(c).
D.
The State argues that disclosure is forbidden because the wiretaps' contents and derivative evidence were suppressed in the criminal cases. Under section 21 of the Wiretap Act, "[a]ny aggrieved person in any trial, hearing, or proceeding in or before any court or other authority of this State may move to suppress the contents of any intercepted wire, electronic or oral communication, or evidence derived therefrom." N.J.S.A. 2A:156A-21.[3] "If the motion is granted, the entire contents of all intercepted wire, electronic or oral communications obtained during or after any interception which is determined to be in violation of this act ..., or evidence derived therefrom, shall not be received in evidence in the trial, hearing or proceeding." Ibid. Section 21 is derived both from Professor Blakey's model statute and from its federal counterpart, 18 U.S.C. § 2518(10)(b). See Blakey & Hancock, 43 Notre Dame L. Rev. at 679-80; see also 18 U.S.C. § 2515.
Professor Blakey indicated "there are situations, however, where illegally intercepted communications might properly be used to unmask affirmative perjury, or against those who have no standing to complain of the illegality." Blakey & Hancock, 43 Notre Dame L. Rev. at 678 n.50 (citations omitted). Federal courts *79 have similarly allowed suppressed evidence to be used for impeachment in criminal and civil cases. See, e.g., United States v. Simels, 654 F.3d 161, 169 (2d Cir. 2011) ; Culbertson v. Culbertson, 143 F.3d 825, 827-28 (4th Cir. 1998). Such cases have noted Title III's suppression provisions "cannot always be applied literally because doing so would preclude the use of illegally obtained wiretap evidence in a prosecution for violating Title III itself." Simels, 654 F.3d at 170 ; see also State v. Lane, 279 N.J. Super. 209, 220, 652 A.2d 724 (App. Div. 1995).
Here, we face another situation allowing disclosure of the suppressed contents and derivative evidence from the illegal wiretaps if good cause is shown. The Estate alleges those fruits of the wiretaps would help it to defend the forfeiture action against Lagano's funds, and show a violation of Lagano's civil rights in the federal action. The State is a party to both actions, and has knowledge of the fruits of the wiretaps. Disclosure to the Estate would level the playing field, removing any advantage the State gained by its illegal wiretaps, while the good cause requirement could protect against unwarranted infringement on privacy. In this unique *139 situation, suppression should not preclude disclosure if good cause is shown.[4]
E.
Finally, the State notes "[t]he Wiretap Act must be strictly construed to safeguard an individual's right to privacy." State v. Ates, 217 N.J. 253, 268, 86 A.3d 710 (2014). "Strict construction, however, does not mean that courts can ignore the plain language of a statute," State v. One 1986 Subaru, 120 N.J. 310, 316, 576 A.2d 859 (1990), or " 'that the "manifestations of the Legislature's intention should be disregarded," ' " State v. Carreker, 172 N.J. 100, 115, 796 A.2d 847 (2002) (citations omitted); see *80 State v. D.A., 191 N.J. 158, 164-65, 923 A.2d 217 (2007). Here, the language of section 17(c) is plain, and the Legislature's intent is confirmed by the legislative history. Moreover, section 17(c) safeguards individuals' right to privacy by allowing disclosure only if the trial court finds good cause.
Therefore, we reject the State's arguments that the court was barred by law from disclosing the wiretaps' contents and derivative evidence even if good cause was shown.
IV.
We next consider the trial court's finding that the Estate has shown "good cause" justifying the disclosure of the contents of the intercepted communications and the evidence derived therefrom. N.J.S.A. 2A:156A-17(c). Professor Blakey explained that under his model provision, which our Legislature adopted as section 17(c), disclosure "shall be made on a case by case basis and only when there has been a showing of 'good cause.' " Blakey & Hancock, 43 Notre Dame L. Rev. at 679 n.51. "Reliance will have to be placed on the sound discretion and good sense of the judicial officer[.]" Ibid.
Therefore, we review the trial court's decision for an abuse of discretion. This accords with "the familiar abuse-of-discretion standard applicable when appellate courts review discovery orders: appellate courts are not to intervene but instead will defer to a trial judge's discovery rulings absent an abuse of discretion or a judge's misunderstanding or misapplication of the law." Capital Health Sys. v. Healthcare Servs., 230 N.J. 73, 79-80, 165 A.3d 729 (2017) ; see State v. Tier, 228 N.J. 555, 561, 159 A.3d 388 (2017). It also accords with the abuse-of-discretion standard applicable to disclosure of an informant's identity. State v. Milligan, 71 N.J. 373, 384, 365 A.2d 914 (1976).
A trial court's determination of "good cause" under section 17(c) involves weighing the need for disclosure against the harm disclosure is likely to cause. The procedures are as follows.
*81 First, as shown by the cases considering "good cause" under section 15's federal equivalent, 18 U.S.C. § 2518(8)(b), the applicant seeking disclosure must show "a need for disclosure." In re Applications of Kan. City Star, 666 F.2d 1168, 1176 (8th Cir. 1981) ; compare In re Grand Jury Proceedings, 841 F.2d 1048, 1053 (11th Cir. 1988) (finding good cause) with NBC, 735 F.2d at 55 (finding "NBC has not shown why it cannot defend its broadcasts in this context without the sealed material").
The State then must have the opportunity, ex parte and in camera, to show disclosure of the contents or derivative evidence likely will cause harm to its interests or the interests of others. We gave *140 examples of such harm in Braeunig. Disclosure may imperil "pending investigations." 122 N.J. Super. at 330, 300 A.2d 346. "Certain communications might tend to disclose the identity of informants or the nature or techniques of police investigative procedures." Ibid."Similarly, there may be conversations the disclosure of which may create a risk of special danger or harm to persons." Ibid."Some conversations might be privileged or otherwise confidential." Ibid. Moreover, there may be "recorded conversations of innocent persons or persons wholly unconnected with the suspected criminal activities ... and their revelation might be unduly embarrassing or humiliating." Ibid.
The State must "demonstrate concrete grounds for the withholding of the contents of any intercepted communications from full disclosure." Ibid."[A]n unsubstantiated and blanket protest" should not prevent all disclosure. Id. at 329, 300 A.2d 346.
The trial court must then balance the applicant's need against the likely harms. Id. at 330, 300 A.2d 346. Only if the need outweighs the likely harm should disclosure be ordered. "[D]isclosure of the contents of intercepted communications should [not] be uncritical or promiscuous or without court superintendence." Id. at 329, 300 A.2d 346.
Disclosure is not an all-or-nothing proposition. The trial court must perform the balancing item by item. Where an *82 applicant shows disclosure is generally warranted, but certain items appear to "have minimal evidential worth and their revelation might be" harmful, those items "may be withheld from disclosure." Id. at 330, 300 A.2d 346. If disclosing specific information in an item risks harm not justified by the showing of need, the information may be redacted or should "be the subject of a protective order." Ibid.
We have reviewed the trial court's sealed December 1, 2016 opinion, which we summarize without revealing the underlying information. The court generally followed the procedures outlined above. The court considered the Estate's submissions and its showing of need. The court also considered the State's responses, including the State's ex parte assertions to the court in camera. The court "carefully weighed all of the competing issues."
The trial court agreed with the Estate's claim that, without the wiretap information, it would be "virtually impossible to effectively challenge the seizure of these monies" or "to litigate the Federal lawsuit alleging that state-created danger ultimately resulted in Mr. Lagano's death." The court found the Estate presented "more than sufficient evidence ... to justify the release of sealed information for both cases." The court found the release of such information was "particularly warranted" because the State was a party in both cases.
The trial court "noted that the wiretaps here were issued in the fall of 2004 and the investigation of the alleged criminal activities is long since over." The court considered whether any confidential informants would be revealed, evaluating the factors enunciated in precedents interpreting N.J.R.E. 516.[5] The court declined to release certain items, and considered redaction.
Based on its careful review, the trial court ruled "[t]he Estate's motion to unseal the requested documents and other *83 evidence should be substantially granted." The court provided an index itemizing the documents and tapes its decision would *141 release. On appeal, the State has not provided us with any of those items. Nor has the State argued that a showing of good cause was not made as to those items. Accordingly, we affirm the trial court's finding of good cause for disclosure of these items in general.
Nonetheless, the trial court applied the wrong standard in ruling on disclosures concerning confidential informants. The court examined whether it was publicly known if a person had ever been a confidential informant for any agency. The court's focus was too general.
In considering whether to disclose wiretap information that may reveal a confidential informant provided particular information or cooperation, it is insufficient to consider merely whether it has been publicly known that a person cooperated with any law enforcement agency, in any investigation, at any time, in any way. Even if it is publicly known that a person cooperated with a law enforcement agency in an investigation, at some time, in some way, the danger to that person may increase greatly if a court allows the disclosure of his cooperation with a different agency, in a different investigation, at a different time, or in a different way. See State v. Hernandez, 225 N.J. 451, 467, 139 A.3d 46 (2016) ("The potential threat to [the informant's] life, however, would increase exponentially if his identity were revealed to the targets in the unrelated drug investigations."). Those engaged in crime are more likely to react violently if they learn not merely that a person ever cooperated, but also that he has cooperated to implicate them. See Roviaro v. United States, 353 U.S. 53, 60-61, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) (considering whether the identity of an informer making a communication "has been disclosed to those who would have cause to resent the communication"); Milligan, 71 N.J. at 383, 365 A.2d 914 (same).
Therefore, if a disclosure would reveal a person was a confidential informant for a particular agency, in a particular investigation, during a particular period, or in a particular way, *84 the court must consider whether it is publicly known that the person cooperated with that agency, in that investigation, during that period, or in that way. See N.J.R.E. 516 (requiring the court to consider whether "the identity of the person furnishing the information has already been otherwise disclosed" (emphasis added) ). Because the trial court did not employ that specific analysis, we vacate the December orders to the extent they relate to confidential informants, and we remand for the court to apply that analysis. We cannot defer to a discovery ruling based on a "misunderstanding or misapplication of the law." Capital Health Sys., 230 N.J. at 79-80, 165 A.3d 729 ; see Tier, 228 N.J. at 561, 159 A.3d 388.
We do not suggest that disclosure is prohibited whenever it would reveal any detail not publicly known about a person's cooperation. It may be that the level of danger to the person from her publicly-known cooperation will not be increased by disclosure of her cooperation with another agency, in another investigation, in another way, or at another time. However, the court must make that assessment and must determine if any increased risk precludes disclosure.
V.
The State does argue that if the suppressed wiretaps and related evidence are unsealed, the disclosure and use of the materials should be subject to tighter restrictions than those contained in the trial court's protective order. We agree and remand for purposes of modifying the order.
*142 The trial court's December 1, 2016 order ordered disclosure of the wiretap and other information to the Estate, but did not restrict the Estate's revelation of that information. The State filed a motion seeking reconsideration or, "in the alternative, that the content of the decision and sealed materials be released 'only to the attorneys involved in the civil litigation and [that the court] prohibit further disclosure or use' " without court approval. The court's December 15, 2016 amended order added that "the electronic *85 communications ... in which Frank P. Lagano was referenced/captured" would be disclosed to the Estate "with a protective order for use only as permitted in the civil litigation." No protective order was issued covering the remaining wiretap materials and other materials.
The Estate cites a federal magistrate judge's November 7, 2016 order that provided "any documents that have been withheld due to confidentiality concerns and the lack of an effective Discovery Confidentiality Order in this matter shall be produced immediately under an 'Attorneys' Eyes Only' designation." However, the magistrate judge's April 20, 2017 "Discovery Confidentiality Order" permitted disclosure to the parties. It also provided that "[i]f the Superior Court of New Jersey releases any materials to the parties in this matter without specific instructions as to restrictions of confidentiality or disclosure, counsel shall meet and confer ... in a good faith effort to agree on any proposed [confidential] designation and restrictions applicable to such materials." In any event, the magistrate judge's order applies only in the federal action.
The Estate made a showing of need only to use the wiretap materials in the forfeiture and civil litigation, not to use them in any other way or reveal them publicly. Moreover, the State alleged Lagano and others were members of organized crime, and the Estate alleged revelation to members of organized crime of Lagano's role as a confidential informant led to his murder. Those allegations, though not yet proven, caution against any wider disclosure than necessary, particularly concerning confidential informants. Given those factors, additional protections are necessary.
Our concern is particularly heightened by the potential disclosure of persons who cooperated as confidential informants. "While [appellate courts] normally defer to a trial court's ... formulation of protective orders, unless the court has abused its discretion, deference is inappropriate if the court's determination in drafting its order is based on a mistaken understanding of the *86 applicable law." Payton v. N.J. Tpk. Auth., 148 N.J. 524, 559, 691 A.2d 321 (1997).
Accordingly, we vacate the December 2016 orders in part, and remand for entry of a broader confidentiality order in both the Passaic County and Bergen County actions. That order shall govern in the forfeiture case and shall constitute the Superior Court's "specific instructions" regarding confidentiality in the federal action. The confidentiality order shall include that: all wiretap materials and other materials disclosed to the Estate under the December orders are only for use in the federal action and the forfeiture action; disclosure shall be for the attorneys' eyes only; and any further revelation, including to the parties or on the public record in either action, is forbidden absent further order of the trial court in that action.
Moreover, the confidentiality order shall provide that if the Estate proposes any revelation which would reveal a person was a confidential informant for a particular agency, in a particular investigation, during a particular period, or in a particular way, the State shall provide confidential *143 notice to that person, and the court shall give that person reasonable opportunity to present opposition ex parte and in camera prior to any revelation. Finally, the order shall permit any third party who seeks to oppose further revelation to have a similar opportunity. Affirmed in part and vacated and remanded in part for further proceedings in accordance with this opinion. The implementation of our opinion is stayed for fourteen days. We do not retain jurisdiction.

Section 15's good cause provision has been mentioned but not interpreted. State v. Dye, 60 N.J. 518, 543-44, 291 A.2d 825 (1972). However, there are federal cases discussing the "good cause" requirement in section 15's federal counterpart, 18 U.S.C. § 2518(8)(b)-(c). Such cases will be cited where pertinent.

Cf. 18 U.S.C. § 2516(2) (stating that when a "prosecuting attorney of a State ... authorized by a statute of that State to make application to a State court judge" applies for an order authorizing a wiretap, the judge must grant the order "in conformity with section 2518 of this chapter [18 USCS § 2518 ]"); see State v. Minter, 116 N.J. 269, 277, 561 A.2d 570 (1989).

" 'Aggrieved person' means a person who was a party to any intercepted wire, electronic or oral communication or a person against whom the interception was directed." N.J.S.A. 2A:156A-2(k). The State does not dispute Lagano was an aggrieved person. Thus, we need not decide whether disclosure under section 17(c) may be sought only by an aggrieved person. Cf. NBC, 735 F.2d at 55 (finding Congress "did not intend [18 U.S.C. § 2518(8)(b) ] to be used as an avenue for discovery by all private litigants in civil cases, unless they are directly aggrieved by a wiretap").

We do not now have before us the issue of whether the suppressed fruits may be "received in evidence" in either action. See N.J.S.A. 2A:156A-21 ; 18 U.S.C. § 2515.

The State apparently did not assert any investigative techniques would be revealed.