**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2247-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

TYQUAN FUQUA,
a/k/a TYOUAN FUQUA,

     Defendant-Appellant.

_____

Submitted December 3, 2024 – Decided April 4, 2025

Before Judges Susswein, Perez Friscia and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 14-04-0026.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Frank M. Gennaro, Designated Counsel, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent (Kaili E. Matthews, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

This case returns to us following a remand. Defendant Tyquan Fuqua appeals from November 17, 2022 Law Division orders entered by Judge Benjamin S. Bucca, Jr. denying his motions to suppress wiretap evidence and unseal three interceptions. In 2013, while investigating a multi-county drug distribution enterprise, State Police obtained authorization under the New Jersey Wiretapping and Electronic Surveillance Control Act (Wiretap Act or Act), N.J.S.A. 2A:156A-1 to -37, to intercept telephone conversations involving defendant and other then-unidentified co-conspirators. The wiretap investigation ran for sixty-five days and resulted in the interception of approximately 20,000 telephone calls. Defendant and several co-defendants moved to suppress wiretap evidence, claiming minimization[1] violations. The original motion judge conducted a suppression hearing over the course of seven days and found no Wiretap Act violations. On appeal, we affirmed the motion judge's rulings, concluding that the reviewed calls were properly minimized. However, we determined the motion judge failed to make minimization findings

---

[1] To satisfy the process known as "minimization," wiretap orders must "require that such interception begin and terminate as soon as practicable and be conducted in such a manner as to minimize or eliminate the interception of such [non-relevant communications] by making reasonable efforts, whenever possible, to reduce the hours of interception authorized by said order." N.J.S.A. 2A:156A-12(f).

A-2247-22

with respect to five of the roughly eighty calls that defendant challenged. We also ruled that the State failed to respond to the motion judge's request for information regarding a sixth call. We remanded to correct those oversights. Another judge, Judge Bucca, heard the remand.

After reviewing the record in light of the parties' arguments and governing legal principles, we conclude Judge Bucca followed our remand instructions, providing sufficient reasons to support his conclusion that the State did not violate the minimization requirements with respect to the remanded interceptions. Moreover, we are not persuaded by defendant's contention that Judge Bucca erred in refusing to unseal three interceptions. We are satisfied Judge Bucca did not abuse his discretion in finding that defendant did not have a need for disclosure.

I.

The underlying facts and pertinent procedural history leading up to our remand order are set forth comprehensively in our prior opinion and need only be briefly summarized. In April 2014, defendant and multiple co-defendants were charged by indictment with first-degree racketeering, N.J.S.A. 2C:41-2(c) and 2C:41-2(d); second-degree conspiracy to distribute a controlled dangerous substance (CDS), heroin, N.J.S.A. 2C:35-5(a)(1), 2C:35-5(b)(1), 2C:35-5(c),

and 2C:5-2; third-degree possession with intent to distribute heroin on or within 1,000 feet of school property, N.J.S.A. 2C:35-5, 2C:35-7; third-degree possession with intent to distribute heroin, N.J.S.A. 2C:35-5(a)(1) and (b)(3); third-degree maintaining a fortified premises, N.J.S.A. 2C:35-4.1 and 2C:2-6; and second-degree money laundering, N.J.S.A. 2C:21-25(a), 2C:21-25(b), and 2C:2-6.

Defendant and eight co-defendants moved to suppress wiretap evidence, alleging Wiretap Act violations. Defendants argued that about eighty of the roughly 20,000 phone calls were not properly minimized.

The motion judge listened to intercepted calls and heard from several witnesses over the course of five days. The judge ultimately ruled that the State Police wiretap monitors exercised objective good-faith in their minimization efforts and that their efforts were objectively reasonable. The judge thereupon denied the suppression motion, issuing a twenty-two-page written opinion.

The motion judge's decision included an assessment of call #1,117. The judge determined that call #1,117 was personal and instructed the State to provide further information to explain why that interception did not violate the Wiretap Act. The motion judge found:

> Call #1[,]117 - 3/18/2013: [Two] minutes [nineteen] seconds. Call deemed non-pertinent. It was not

minimized. [Defendant] speaks to "SB" regarding sex. Defense argues this is a personal call. It is not the State's business. Furthermore, this was weeks into the wiretap. The State argues that SB was a co-conspirator who ultimately was stopped on the New Jersey Turnpike with [defendant] with 12,000 bags of [h]eroin. Additionally, the State has other calls regarding the two individuals where they discuss personal issues and drugs in the same call. The [c]ourt finds the call should have been stopped and/or monitored. The nature of the call early on was all sexual in nature. The call is somewhat short in duration. Clearly, the parties are discussing a personal relationship. If the State has another call before March 18, 2013, where the parties discuss criminal activity, then the [c]ourt would be of the mindset that listening to the call would not have been unreasonable. [The court] ask[s] the State to provide this information to the [c]ourt within [ten] days.

[Emphasis added.]

The State did not provide the requested information.

In June 2016, defendant pled guilty to third-degree possession with intent to distribute heroin pursuant to a negotiated plea agreement, preserving the right to appeal the denial of the suppression motion. Sentencing was delayed pending resolution of the cases against the co-defendants. In January 2018, Judge Bucca sentenced defendant in accordance with his plea agreement to a three-year prison term.

On appeal, we affirmed the motion judge's order denying suppression with respect to the minimization of all the challenged interceptions except for calls #46, #514, #523, #11,895, and #12,029. State v. Fuqua, A-0137-18 (App. Div. Aug. 20, 2021) (slip op. at 5-6). Those calls were not addressed in the motion judge's otherwise thorough written opinion. We remanded for factual findings and conclusions of law with respect to those calls. Ibid. We also instructed the State to provide the remand court with the additional information the motion judge had requested regarding call #1,117. Id. at 6. We specifically stated:

> The record before us does not indicate whether the State provided the requested information concerning earlier intercepted calls in which the participants discussed both personal matters and CDS-related matters. Nor did the trial court issue a revised or supplemental opinion accounting for any such additional information. We therefore are constrained to remand the matter for the trial court to make additional findings, as appropriate, and to issue a definitive ruling whether the failure to minimize this call constitutes a violation of the Wiretap Act. If the State has not already supplied the information requested in the trial court's written opinion, we leave to the discretion of the trial court as to the manner by which the State shall provide that information to the court and defense counsel. We also leave to the trial court's discretion whether to require or accept additional submissions from the parties or to convene a new oral argument.

A-2247-22

On July 18, August 3, and October 31, 2022, Judge Bucca conducted the remand hearing to consider the calls that had not been addressed by the initial motion judge and to assess the State's information regarding call #1,117. Judge Bucca listened to the five calls (#46, #514, #523, #11,895, #12,029) to determine if State Police violated the Wiretap Act. The judge also reviewed two additional calls (#1,115 and #1,116) to determine whether the interception of call #1,117 violated the Act.

Judge Bucca issued his rulings in an oral opinion on October 31 and entered the final orders on November 17. With respect to calls #46, #514, #523, #11,895, and #12,029, the judge applied the three-part minimization test spelled out in State v. Catania,[2] concluding the monitoring officers had not violated the Wiretap Act's minimization requirements. The judge also denied defendant's motion to unseal calls #1,115, #1,116, and #1,117. This appeal followed. Defendant raises the following contentions for our consideration:

POINT I

THE TRIAL COURT IMPROPERLY DENIED DEFENDANT'S MOTIONS TO SUPPRESS THE EVIDENCE OBTAINED BY THE WIRETAPS AND TO UNSEAL THREE OF THE ORIGINAL WIRETAP INTERCEPTIONS.

---

[2] 85 N.J. 418 (1981).

II.

We first consider whether the State complied with the Wiretap Act's minimization requirements. Because this matter returns to us following our remand order, we need not repeat at length the legal principles that govern this appeal. It is sufficient to note that in Catania, our Supreme Court adopted the three-pronged test devised in Scott v. United States, 436 U.S. 128 (1978), to determine whether wiretap monitors made reasonable efforts to minimize interceptions of non-relevant calls. 85 N.J. at 429. Under this analytical framework, reviewing courts must consider: (1) "the nature of the individual phone calls," (2) "the purpose of the wiretap," and (3) "the reasonable expectation of the [monitors] as to what they would overhear based on the information available to them at the time of the wiretap . . . . " Id. at 433-34.

The first factor accounts for the fact that the nature of a particular call may make it difficult to minimize. Id. at 433. Reviewing courts must consider, for example, whether the language used in the conversation is "ambiguous," "guarded," or "cryptic." Ibid. Additionally, some calls may be of short duration, providing the monitor with little opportunity to determine the call's relevance to criminal activity. Ibid. See also State v. Pemberthy, 224 N.J. Super. 280, 300

(App. Div. 1988) ("The fact that entire conversations of brief duration were recorded . . . [does] not affect the overall intent to minimize.").

The second factor in the Scott/Catania analytical framework—the purpose of the wiretap—recognizes that broader electronic surveillance efforts are justified when necessary to "determine the full scope of [an] enterprise" when police are investigating a conspiracy. Catania, 85 N.J. at 433.

The third factor, which requires reviewing courts to consider the "reasonable expectations" of the monitors, recognizes that wiretap monitors may be justified in intercepting a broader scope of calls in the beginning of a wiretap investigation before "patterns of relevant and non-relevant phone calls" emerge. Id. at 434.

The Catania Court stressed that when executing a wiretap order, "police must make reasonable efforts to minimize intrinsically as well as extrinsically." Ibid. The Court explained:

> One [method of intrinsic minimization] is "spot monitoring," a technique whereby the monitoring agent stops listening to a conversation if, after a short while, it appears to be irrelevant. However, rather than terminating the interception indefinitely, the agent continues to tune in periodically to see if the conversation has turned to criminal matters. If it has, then [the agent] resumes full interception. Spot monitoring would protect the privacy of innocent callers without providing a loophole through which

9

> criminals could avoid detection by prefacing their conversations with innocent small talk. Moreover, spot monitoring is highly persuasive evidence of a good-faith intention on the part of the monitors to minimize.
>
> [Id. at 446 (citation omitted).]

It added that to survive judicial scrutiny, intrinsic minimization efforts must be both "objectively reasonable" and made in "subjective good faith." Id. at 432, 436.

Although the requirements of the Wiretap Act must be strictly enforced, see State v. Ates, 217 N.J. 253, 268 (2014) (citing State v. Worthy, 141 N.J. 368, 379-80 (1995)), the Catania Court stressed judicial review of intrinsic minimization does not impose an impracticable standard that might "force monitors to terminate prematurely their interception of phone calls which begin on an innocent note but later turn to discussions of criminal activity." 85 N.J. at 445. Importantly, the Court recognized that "monitors are not prophets, and thus they are not expected to anticipate and screen out all non-relevant phone calls. All they are expected to do is make reasonable efforts to identify innocent, non-relevant phone calls and minimize their interception." Ibid.

It remains for us to apply these foundational legal principles to Judge Bucca's rulings. We do so with respect to each of the challenged telephone interceptions in turn.

10

Defendant made call #46 from his phone on March 5, 2013 at 11:56 a.m., approximately twenty-four hours after the wiretap was first authorized. The call lasted for five minutes and twenty seconds. During the call, defendant spoke with an unidentified woman and mentioned that he is a student in Newark but would not say where because "I don't need people to know where I be at in the morning." The woman later stated "[y]ou trick at night and then you go and then do what you got to do out here, so you don't have to go all the way home." The two then discussed whether defendant "went to Coco Bongo."

Judge Bucca found that, because "this call occurred approximately [twenty-four] hours into the wiretap[,] [t]he agents were familiarizing themselves with the voices and flow of conversation." He continued that, "[t]he agents were not sure what tricking at night meant or what going to school meant, but [it was] something they . . . felt as though they needed to find out and learn." Ultimately, the judge decided call #46 was not a violation of the Wiretap Act "given the ambiguous language during the call" and "the fact that the wiretap had only occurred for [twenty-four] hours now and the words could have been suggest[ive] of criminal activity."

Applying the three-part Catania test, we concur with Judge Bucca's determination that call #46 did not violate the Wiretap Act. Although the five-minute conversation was not minimized, we reiterate "[t]he fact that entire conversations of brief duration were recorded, especially at the beginning of the investigation, [does] not affect the overall intent to minimize." See Pemberthy, 224 N.J. Super. at 300. As to factor one—the nature of the call—defendant discussed "tricking at night[,]" which was ambiguous and an unidentified term. Concerning factor two—the purpose of the wiretap—the investigation was focused on a drug-distribution operation that likely involved a large number of participants. As Judge Bucca aptly noted, the monitors had only been listening for around [twenty-four] hours and needed to "determine the full scope of [the] enterprise." See Catania, 85 N.J. at 433. Furthermore, factor three—the "reasonable expectations" of the monitors—recognizes that monitors may intercept a broader scope of calls in the beginning of the wiretap before patterns are recognized. Id. at 434. Since the wiretap was only operational for twenty-four hours at that point, we are satisfied the monitors were justified in listening to the entirety of the call.

Call #514

Call #514 occurred on March 9, 2013 and was six minutes and fifty-six seconds long. The State indicated that the call was minimized for "at least one minute" towards the end of the call but could not say when exactly because they did not have "the official state police computer that showed when the call was minimized." In the call played at the remand hearing, defendant is speaking to an unidentified woman. The woman invites defendant to her sister's birthday party that night. Defendant asks whether "[t]he hoochy mama" is going to be there and says he will "leave one of them little things down." The woman responds, "I don't know what hoochy mamas is" and "[a]round here we don't do that." Defendant also talks about his new car and a date that he has later. Once a child speaks to the woman, the call ends.

Judge Bucca found call #514 did not violate the Wiretap Act. The judge explained:

> At this point in the wiretap, a pattern had emerged where [defendant] would rapidly switch topics from personal matters to criminal activities. The agents looked for these patterns in conversations where the topic changed frequently which is what was occurring in this case. Thus, the agents had a reasonable expectation [defendant] could at any point begin talking about criminal activity during . . . the conversation. Additionally, they engaged in spot monitoring during

this inception which is persuasive evidence of good faith intention to minimize non-relevant calls.

Applying the three-part Catania test, for factor one—the nature of the call—defendant discussed "[t]he hoochy mama[,]" which is ambiguous. Concerning factor two—the purpose of the wiretap—the monitors had been listening for around five days at this point and were still assessing "the full scope of [the] enterprise." See Catania, 85 N.J. at 433. For factor three—the "reasonable expectations" of the monitors—the monitors were still recognizing patterns. Id. at 434. We see no basis upon which to overturn Judge Bucca's conclusion the monitors did not violate the Wiretap Act. We are satisfied the spot monitoring of call #514 established compliance with the Act's minimization requirements. Id. at 446 (stating that "spot monitoring is highly persuasive evidence of a good-faith intention on the part of the monitors to minimize").

### Call #523

Call #523 also took place on March 9, 2013. It was two minutes and thirty-two seconds long and includes two separate calls as defendant answered a second call while the first caller was placed on hold. The call was about forty to fifty percent minimized before the State Police determined it was non-pertinent. Defendant first called an unidentified woman who talked about going out to "AC," presumably Atlantic City, with others. Defendant then took a

14

second call and stated, "I'm gonna go get your shit and we gonna go to IHOP." The second caller replied, "[o]h, man, I wanted you to go with me to go look at this car." They agreed to look at the car later. Defendant then hung up and returned to the first caller, at which point the interception ended.

Judge Bucca found that "given [defendant]'s pattern of repeatedly and rapidly interspersing personal matters with criminal activity, agents had a reasonable expectation with such a pattern that criminal activity could be discussed at any moment." The judge further explained, "the agents still minimized a significant portion of the call." He concluded the monitor's conduct was reasonable and did not violate the Wiretap Act.

We agree. This call was ambiguous especially considering that within the span of two and a half minutes, defendant was engaged in two separate phone calls. Further, the wiretap at this point had only been authorized for five days. Accordingly, the monitors were still assessing patterns. See Catania, 85 N.J. at 433. We deem it noteworthy that even though both calls occurred in the span of less than three minutes, the monitors intrinsically minimized forty to fifty percent of the conversation. Considering all these circumstances, we concur with Judge Bucca that the monitors did not violate the Wiretap Act.

Co-defendant Derek Fuqua[3] made call #11,895 on March 25, 2013 at 2:45 p.m. The call was seven minutes and thirty-one seconds long. It was minimized nine times. During the call, Derek argued with an unidentified woman about him not answering her phone calls.

Judge Bucca found:

> Derek Fuqua was a . . . participant in this call and mentions getting some pills at the beginning of the conversation indicating . . . CDS-related activity or at least the potential of it.
>
> Though the callers primarily discussed their personal relationship, the monitoring agent still minimized the call numerous time[s], nine, in fact, and continued to spot check because of the mention of the pills at the beginning of the call. The monitoring agents' conduct demonstrates a . . . good-faith intention to minimize. Thus, this [c]ourt finds the agent properly minimized call [#]11[,]895, the monitoring agent's conduct was reasonable and it did not violate the Wiretap Act.

As to this call, it was unclear if the unidentified caller was a part of the conspiracy. Given the monitors recurrent minimization efforts, we agree with Judge Bucca's conclusion that the monitors acted reasonably by repeatedly spot-

---

[3] Because defendant and co-defendant Derek Fuqua share the same surname, we refer to Derek by his first name. We mean no disrespect in doing so.

checking the call. See Catania, 85 N.J. at 446 (stressing the significance of spot monitoring).

Call #12,029

Call #12,029 took place on March 26, 2013 at 12:47 a.m. and lasted six minutes and fifty-four seconds. Derek called Wells Fargo bank to discuss an overcharge and to make a payment. During the call, Derek stated his mailing address and banking information. Judge Bucca found call #12,029 provided direct identification of Derek as the caller, which would "preclude later attempts by [Derek] to argue that it was not him on the call." Judge Bucca further reasoned that the purpose of the wiretap was to obtain personal information about the conspirators, which included Derek. The monitors thus had a reasonable expectation they would learn identification information about Derek, his bank accounts, his purchases, and his address. We agree it was reasonable for the monitors to listen to the entirety of the call given that this was a money-laundering investigation that required information concerning Derek's bank account, which was mentioned throughout the call.

In sum, with respect to all of the calls encompassed in our remand order, we find no error in Judge Bucca's conclusion that the State Police monitors did not violate the minimization requirements of the Wiretap Act.

17

III.

We turn next to defendant's contention that Judge Bucca erred in denying his motion to unseal three interceptions. In response to our remand instruction with respect to call #1,117, Judge Bucca listened to calls #1,115, #1,116, and #1,117. Those calls occurred on March 18, 2013, all within the span of nine minutes.

At 3:34 p.m., defendant received call #1,115. An unidentified woman asked, "[h]ow much are the Gs?" and defendant responded, "[g]rams? . . . [e]ighty." The call lasted twenty-seven seconds. Two minutes later, defendant received call #1,116 in which an unidentified woman spoke about "Gs[,]" likely referring to grams. The woman stated, "they said they want to check it first before they start buying. And then they was like they want Gs. They were, like, they might want the Gs." The conversation turned to a discussion of gas money as the woman was currently using defendant's car to drop "Tweet" around the corner from "Seaman Street," presumably near Derek's mailing address. This call lasted for one minute and thirty-three seconds.

At 3:45 p.m., call #1,117 occurred. The initial motion judge characterized call #1,117 as personal.

At the remand hearing, the State verified that the three calls occurred between the same two phone numbers and within nine minutes of each other. Defense counsel requested that the three calls be unsealed. Judge Bucca denied this request, stating:

> [D]efense . . . argues to unseal call [#]1[,]117 arguing that it can discover relevant facts such as the originating phone number of the call or other call information. The State argues that the defendant's request is without merit because the State has provided defendant with a copy of the Wiretap Act directly from the servers that held the information. The [w]iretap was entirely digital and cannot be modified. Considering the virt[ual] nature of the wiretap and that the information was downloaded directly from the state police server which held the information and based on the State's representation, this [c]ourt finds that there is no relevant distinction between the original take of the call and a copy of the call.
>
> Furthermore, the defense makes no allegation and presents any evidence that the State modif[ied] the copy to support its claim that . . . there should be an unsealing of the original wiretap. They just make a general argument without presenting any facts to give any suggestion that there was some nefarious conduct that . . . was committed by . . . the State in turning over the . . . call information to [the] defense. So[,] as a result, the [c]ourt finds that the defense argument to unseal the wiretap does not have merit and should be denied.

Defendant argues Judge Bucca on remand erred "by denying [d]efendant's motion to unseal the original records of [calls #1,115, #1,116, and #1,117]"

 A-2247-22

because the State's equipment "lacked the capacity to review the places in the various calls where spot monitoring took place." Defendant contends that "the dispute as to the identity of the female participant in the [three] calls" provides the "good cause" necessary to justify the unsealing of the calls. We are unpersuaded.

The Wiretap Act provides in pertinent part, "[t]he contents of any intercepted wire, electronic or oral communication, or evidence derived therefrom, may otherwise be disclosed or used only upon a showing of good cause before a court of competent jurisdiction." N.J.S.A. 2A:156A-17(c). In Estate of Lagano v. Bergen County Prosecutor's Office, we held that "[a] trial court's determination of 'good cause' under section 17(c) involves weighing the need for disclosure against the harm disclosure is likely to cause." 454 N.J. Super. 59, 80 (App. Div. 2018). We added, "the applicant seeking disclosure must show 'a need for disclosure'" and "[t]he State then must have the opportunity, ex parte and in camera, to show disclosure of the contents or derivative evidence likely will cause harm to its interests or the interests of others." Id. at 81 (quoting In re Applications of Kan. City Star, 666 F.2d 1168, 1176 (8th Cir. 1981)).

Further, Estate of Lagano makes clear we review the denial of a motion to unseal a wiretap applying the abuse of discretion standard. Id. at 80. "This accords with 'the familiar abuse-of-discretion standard applicable when appellate courts review discovery orders: appellate courts are not to intervene but instead will defer to a trial judge's discovery rulings absent an abuse of discretion or a judge's misunderstanding or misapplication of the law.'" Id. at 80 (citing Cap. Health Sys. v. Healthcare Servs., 230 N.J. 73, 79-80 (2017)).

Here, Judge Bucca emphasized the three calls were made between the same two phone numbers within a few minutes. Although different unidentified women could have been using the same phone to make the calls, that seems unlikely. Furthermore, defendant's attorney acknowledged on the record that it is "hard to make the conclusion based on the calls" that it is not the same woman's voice on the three calls. In these circumstances, we are satisfied the judge did not abuse his discretion in concluding that defendant has not established a "need for disclosure."

To the extent we have not specifically addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2247-22